**TANZER ECONOMIC ASSOCIATES, INC., Plaintiff,**

v.

**Roscoe G. HAYNIE et al., Defendants.**

**No. 74 Civ. 4857 (MEF).**

United States District Court,
S. D New York.

Nov. 20, 1974.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff.

Davis, Polk & Wardwell, New York City, for defendants, LTV, JLI and JLI-II; Henry L. King, New York City, of counsel.

Reed, Smith, Shaw & McClay, Pittsburg, Pa., for defendant J&L Steel.

## MEMORANDUM

FRANKEL, District Judge.

■ This action, brought by an alleged owner [1] of 25 shares of Jones & Laughlin Steel Corporation (J&L) in the form of a class action, seeks injunctive relief and/or damages because of a proposed merger in which J&L is to become a wholly-owned subsidiary of defendant L.T.V. Corporation (LTV). A shareholders' meeting has been set for November 22, 1974, for the purpose of passing upon the merger proposal. LTV, through another subsidiary, currently owns more than 81% of the common stock of J&L, enough to carry the proposal without other support. At least as an abstract theory, therefore, the 25,000 shareholders owning the remaining 3,000,000 shares may have no effective choice except (a) to dissent and seek an appraisal or (b) to block the merger, as is now being attempted. There are, however, further and more complex reasons why all the shareholders are entitled to full and fair information on which to consider the merger proposal. Cf. Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374 (2d Cir. 1974).

---

1. Initially by telephone, then by motion papers filed last evening, the court was apprised that the owner of the 25 shares is not Tanzer Economic Associates, Inc., but that corporation's Profit Sharing Plan. It was also represented that the corporation's shareholders and the Plan's trustees are the same two individuals, Michael and Deborah Tanzer. Upon these representations, and without the usual time for defensive explorations, the court allowed substitution of the Tanzers, as trustees, in place of their corporation. Opposing that relief, defendants raised questions whether the initial "mis-statements" in the complaint—made against a merger announced last August, attacking a proxy statement issued October 25, and perpetuated in motion papers filed almost two weeks after commencement of this action—might stir doubts immediately as to the motion for a preliminary injunction and, in the longer range, as to the adequacy of this uncertain 25-share owner as representative of a 3,000,000-share class. These suggestions are scarcely without weight. In light of the determination reached on other grounds, they require no further exploration now.

Claiming this right has been violated, plaintiff sues J&L, LTV, members of both corporations' boards of directors, and Lionel D. Edie & Co., Inc. (Edie), which rendered an opinion to the boards that the price of $29 per share offered to the shareholders of J&L is "fair and equitable."

Plaintiff alleges violations of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(a), and the rules and regulations promulgated thereunder. The central charges, more fully detailed below, are that defendants have employed false and misleading proxy materials making the merger proposal (and the $29 price) seem fair when it is, upon the true facts, grossly unfair.

Plaintiff has moved for a preliminary injunction to bar the November 22 meeting and any other steps toward consummation of the proposed merger. In the familiar pattern, the motion came on swiftly, attended by a swift accumulation of papers. Counsel were heard on Monday, November 18, and further papers and argument were received yesterday afternoon. To afford such time as may be feasible for at least some appellate scrutiny, this decision is announced with maximum possible speed.

Having in mind the interest in expedition, it seems unnecessary at *nisi prius* to recite the familiar principles at length. Plaintiff does not question or seek to shirk its burden of demonstrating "a combination of probable success and the possibility of irreparable injury" or showing that it has "raised serious questions going to the merits and that the balance of hardships [tips] sharply in [its] favor." Stark v. New York Stock Exchange, 466 F.2d 743, 744 (2d Cir. 1972). Tested by the settled criteria, the motion before the court is insufficient for reasons hereinafter outlined.

As has been noted, the gravamen of the complaint, and of the grounds for the relief now sought, "is that defendants have solicited approval of the proposed merger by the use of false and misleading proxy materials and solicitations and that the proposed merger is in and of itself unfair to the point of fraudulence."[2] The last portion of the quoted statement—the notion of unfairness "to the point of fraudulence"—may be left at the threshold; it is not effectively argued and seems, at least in the present state of the case, to be without substantial import. It may also be noted that in the haste inevitably attending such a proceeding, a factor that tends to stoke the fires of advocacy, the papers elsewhere assert somewhat more than is capable of cogent and pointed support. For purposes, therefore, of this memorandum, the court confines this discussion to the contentions pressed earnestly and meaningfully at oral argument. We consider five items of alleged falsity or omission said to have made the proxy statement so materially misleading as to warrant the injunctive relief now sought.

■ (1) The point of seemingly greatest substance, most forcefully pressed, is that the proxy statement should have been accompanied by a copy of a report of Lionel D. Edie & Co., Inc., which was rendered to the boards of directors last month, which expressed the view that the price of $29 per share was a fair one, and which was thus described and referred to in the proxy statement. Plaintiff relies, *inter alia,* upon the authority of Judge Weinfeld, in an oral opinion of October 25, 1974, for this position. Universal Capital Corporation v. Barbara Lynn Stores, 74 Civ. 4460.

As to Judge Weinfeld's decision, obviously a matter for early and deferential notice, it turns out to be of little, if any, help to plaintiff. The cited case, repeatedly described by its participants as "unique," involved an inapposite attempt at "going private," and a prayer for a harmless two-week adjournment of the consummation of that process. It was a case capable of speedy trial upon

---

2. Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction 3.

the merits, where there was scarcely robust resistance to distributing the report in question, and where the circumstances seemed to suggest no possible reason for not doing that. The report appears to have been much fuller and more informative than the proxy statement, a circumstance not present (or strongly claimed to be present) here. The case is not authority for the far headier consequences plaintiff seeks in this case.

As to the merits, the view plaintiff takes is at best highly debatable. The Edie report, viewed with hostile retrospectivity, could be read as a brief for the $29-per-share position plaintiff assails. Plaintiff has its own expert, an evidently respected economist, who looks at the entirely available figures and says the fair value would run $48 to $64 per share. Query whether the distribution of a report like the Edie document could not readily be claimed to be itself a form of misleading or deceptive propaganda. This is not to suggest by any means that the report *is* in any respect incorrect or misleading. It is to note serious doubt as to the correctness of the thesis that such a document *must* or *should* be given to shareholders along with the rest of the proxy materials.

The Edie report is filled with comparisons between J&L and other steel companies. It makes sense to study such comparisons. How safe it is to distribute them as proxy material is another question. The sophisticated judgments expected of directors may rest in part upon knowledge of the industry and of companies in it that is not necessarily possessed by shareholders. There may be factors for judgment that need not be recounted at length for directors, but might need recounting, and a course of instruction, for shareholders. Things omitted about other companies for directors might not be safe to omit for shareholders. Estimates honestly, but not certainly, made for other companies might not be safe for dissemination to shareholders of J&L.

The court, in this speedy determination, does not hold that documents like the Edie report should not or may not go to shareholders. Nor is the court prepared to hold that the failure to distribute the report may not in the end prove to have been wrongful. All that is now determined is that the question is shrouded in doubt, and that there is no imposing demonstration that plaintiff will prevail on it. It may well be that directors contemplating mergers should tender such materials in the future as part of the proxy materials to be proposed to, and scrutinized by, the S.E.C. (It is stated by defendants that the S.E.C. officials considering the proxy materials involved here were given summary forms of the Edie report, were offered the final version, said they had no need to see the latter, and never suggested that the report, or any part of it, should go to the stockholders.) It may be that further litigation in this volatile field will generate clearer rules on the subject. It is not possible now, certainly not for the purposes of a preliminary injunction, to discern the clear wrong plaintiff asserts.

The point is further diminished when plaintiff purports to specify the enlightenment that would have been added had the Edie report been distributed. The Edie projection, plaintiff says, would have shown that J&L earnings could be expected to come to $10 per share for 1974. This is contrasted with the $8 or so per share said to be gleanable from the proxy statement. The contention at its best is somewhat conjectural and of dubious significance for the shareholder seeking on all the evidence to judge the adequacy of the price of $29 per share. The court knows what housewives and economists know—that nobody knows how to forecast safely in the current state of our economy. How much better a shareholder would have been with another short-term projection is a matter for severe skepticism. It is, at any rate, not a powerful reason for finding commanding force in the argument concern-

ing the failure to distribute the Edie report.

■ (2) It is claimed that the proxy statement should have set out a net current asset value of about $35 per share, a figure plaintiff derives from the material that *was* given. The court does not find basis for saying that this aspect of the complaint shows a material omission or omissions. Whatever it tells about the fair price per share, the net asset value was discernible, as plaintiff discerned it. True, plaintiff has expertise at its disposal beyond that possessed by the average shareholder. But the expertise has served here only to frame a debate, not to show a "misstatement." As plaintiff acknowledges, a net asset value of $22.41 per share leaps to the eye of the unsophisticated reader of the proxy statement. But, says plaintiff, valuing inventory at current cost would add over $13 per share. But, reply defendants, settled and proper accounting practice by J&L entailed no such mode of valuation. There is no answer to this—none, at least, that leads to a preliminary demonstration of deception or actionable omission in the proxy statement.

■ (3) It is said that the proxy statement should have told that (a) LTV had paid $42.50 per share (adjusted) for J&L stock in 1968 and (b) this approximated the book value at the time. The contrast is with the offer now of $29 per share compared with a book value of $50.22. The argument is not weighty. The years from 1968 to 1974 have been hectic, in economics as in other things. Stock prices, including their relationships to earnings and book values, have undergone drastic and scarcely orderly changes. The court is utterly unpersuaded that honesty or fair disclosure required the kind of information (absent a huge and bewildering context) plaintiff now claims was crucial.

■ (4) The proxy statement announced a reserved power to terminate the merger proposal if holders of 500,000 or more shares dissented. In this perfectly sensible provision plaintiff detects, but fails to document, sinister motives. The decisive point remains that responsive directors were entitled, if not required, to make such a provison. Cf. Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, at 382 (2d Cir. 1974).

■ (5) Similarly lacking in substance is the argument that LTV's business purpose was falsely stated to conceal the lack of a business purpose of J&L for the merger. The alleged falsity is bald assertion. The absence of a J&L purpose is, for federal purposes at least, a matter of no consequence.

The court has considered other, lesser claims of misstatement and omission. Taken altogether, these arguments on the merits are not stunning. The chances of plaintiff's ultimate success, if not negligible, are not impressive.

When we turn from the merits to the equities, the case for a preliminary restraint dwindles to very little. Briefly stated, we have a class of people holding 3,000,000 shares for whom a 25-share plaintiff presumes to speak. The price per share has risen to nearly $29 from a far lower figure because of the prospective merger. The prospect is strong that an injunction now will lead to a precipitous decline. At least in the short run, many people will be hurt.

In the longer run, should plaintiff prove correct, there is a sufficiently adequate remedy at law. If "sufficiently adequate" is ungainly English, it is intentional. The remedy is not perfect. If somewhat romanticized, plaintiff's argument that shareholders should not be "frozen out" of their corporations is not weightless. Money damages will not thaw shareholders thus afflicted. But that remedy, on balance, given the estimate of success, seems enough in the circumstances.

The motion for a preliminary injunction is denied. It is so ordered.