373 A.2d 1350

Richard P. SCHAEFER, Appellant,

v.

Frank C. HILTON, Secretary of
Property and Supplies.

Supreme Court of Pennsylvania.

Argued May 5, 1975.

Decided June 3, 1977.

238

Thomas D. Caldwell, Jr., Caldwell, Clouser & Kearns, Harrisburg, for appellant.

Theodore A. Adler, Deputy Atty. Gen., Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Richard P. Schaefer, a taxpayer, filed a complaint in equity in the Commonwealth Court seeking both a temporary and permanent injunction restraining appellee, Frank C. Hilton, then Secretary of the Department of Property and Supplies of the Commonwealth of Pennsylvania,[1] (hereinafter referred to as "the Department"), from proceeding with a bid proposal for the purchase of school buses for the use of certain school districts and intermediate units in the Commonwealth. After a hearing, the request for the entry of a preliminary injunction was denied. No appeal was taken from that ruling.

Counsel for both parties stipulated that the record made at the hearing on the preliminary injunction, together with the pleadings, should constitute the entire record for the purposes of determining the merits of the complaint itself and appellant's request for a permanent injunction. Each party then filed a motion for summary judgment, the motions were argued before the Commonwealth Court en banc, and judgment was entered in favor of appellee Hilton. In an opinion for the court, authored by Judge Rogers, the power of the Secretary of the Department to enter into such a transaction was upheld and judgment was entered in favor of the Department and against the appellant. Judge Blatt filed a dissenting opinion. Appellant appeals from the denial of

1. Section 8 of the Act of 1975, July 22, P.L. 75, No. 45; 71 P.S. § 631 (Supp.1976–77) amended the heading of Art. XXIV by substituting "General Services" for "Property and Supplies."

240

his request for the entry of a permanent injunction and the judgment entered in favor of appellee.[2]

The single issue raised in this litigation is whether the Department of Property and Supplies exceeded its statutory authority when it proceeded to invite bids for the purchase of school buses intended for the use of school districts and intermediate units and not for the use of the Commonwealth or any agency thereof. It is admitted that neither the Commonwealth nor any agency of the Commonwealth has a need for these buses but rather that the Department intended to perform the service of purchasing agent on behalf of those school districts and units which had expressed a desire to purchase their requirements through the Department. After a review of the statutory authority vested in the Department, we agree with appellant that the intended transaction exceeded the powers granted to the Department by the General Assembly and therefore reverse the decree of the Commonwealth Court.

On or about November 9, 1973, the Department solicited from certain school bus vendors their bids for the sale to the Department of school buses to satisfy the needs of school districts and intermediate units. The invitation-bid proposals were transmitted at the request of the Pennsylvania Department of Education which had determined through a survey the bus requirements of such districts and units. On November 20, 1973, appellant filed his complaint in equity seeking both a preliminary and permanent injunction against the Department further proceeding with the bid proposals.

The Act of April 29, 1929,[3] as originally drafted, conferred upon the Department the role of purchasing

2. Jurisdiction is vested in this Court as a result of the Act of July 31, 1970, P.L. 673, No. 223, § 203, art. II, 17 P.S. § 211.203 (Supp.1976–77).

3. Act of 1929, April 9, P.L. 177, art. XXIV, § 2401 et seq.; 71 P.S. § 631 et seq. (Supp.1976–77).

agent for the requirements of the state government. In 1971, Section 2403 which relates to the scope of the purchasing power of the Department was amended [4] to permit, in some instances, the participation by political subdivisions and authorities created by these political subdivisions in purchase contracts entered into by the Department. This new subsection is the focal point of our present inquiry. Subsection (h), at the time of the institution of this lawsuit,[5] provided in pertinent part:

> "(h) To permit, subject to such terms and conditions as the Department of Property and Supplies may, and as hereinafter specifically provided, shall, prescribe, any political subdivision or authority created by a political subdivision *to participate in or purchase off* purchase contracts for materials, supplies and equipment entered into by the department." [6]

(Emphasis added).

The majority of the Commonwealth Court concluded that Subsection (h) independently empowered the Department to contract for goods, all of which would be for the exclusive account of political subdivisions. Rejecting appellant's contention that the Legislature only intended, by the addition of Subsection (h), to provide the political subdivisions with an opportunity to share in purchases entered into by the Department for articles for the con-

4. Subsection (h) was added to Section 2403 of The Administrative Code of 1929 by the Act of July 9, 1971, P.L. 201, 71 P.S. § 633(h) (Supp.1976–77).

5. Subsection (h) was further amended on May 10, 1974, P.L. 283, No. 85, § 1, imd. effective 71 P.S. § 633(h) (Supp.1976–77) by inserting in the first sentence after "or authority created by a political subdivision" the phrase "or the State Public School Building Authority."

6. There is no question that school districts are "political subdivisions" within the meaning of Section 2403(h), *supra.* The Statutory Construction Act of 1972 defines political subdivisions as "any county, city, borough, incorporated town, township, *school district,* vocational school district and county institution district." 1 Pa.C.S.A. § 1991 (Supp.1976–77) (Emphasis added).

sumption of the state government, the Commonwealth Court reasoned:

> "The difficulty with this argument is that subsection (h) read literally, as we are required to read it, plainly provides otherwise. If the subsection provided allowance for political subdivisions only 'to purchase off purchase contracts' entered into by the department, the plaintiff's argument would have some cogency; but the subsection additionally authorizes the department to permit political subdivision 'to participate in' contracts entered into by the department without restriction of the identity of those with whom the political subdivisions should participate."

To properly assess the interpretation of Subsection (h) reached by the majority of the Commonwealth Court and urged by the appellee, we must first consider the provision in the context of the entire section of which it was made a part.[7] It is important to note that the Commonwealth Court majority and the instant appellee concede that prior to the adoption of Subsection (h) the purchasing power of the Department was restricted to the needs of the Legislature and other departments of state government. Section 2403 not only consolidated the Commonwealth's purchasing authority in the Department, but it also set forth a comprehensive scheme directing the exercise of that responsibility. For illustration, Subsection (a) provides that the Department has the obligation "[t]o formulate and establish standards or specifications" for the articles or materials to be purchased and conditions the adoption of these standards or specifications upon prior approval of a "majority of the departments, boards and commissions using the

---

7. "Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, . . . and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; . . ." 1 Pa.C.S.A. § 1953 (Supp.1976–77).

article." Subsections (b) and (c) of Section 2403 impose the requirement of competitive bidding when articles are supplied for state requirements. If we were to accept the interpretation given to Subsection (h) by the majority of the Commonwealth Court (that it represents an autonomous grant of authority to the Department to purchase goods other than those required by the Commonwealth), we would be presented with anomaly of having the Department acting as a purchasing agent for the exclusive needs of a political subdivision *without* the restraints of competitive bidding, but requiring this procedure where the Department is acting on behalf of its prime principal, i. e., the state government.[8] Equally inexplicable is the fact that this interpretation would deny the political subdivision any voice in the terms and conditions set by the Department.[9] Thus, the construction

8. Subsection (h) expressly releases the political subdivisions from the responsibility of competitive bidding. If we follow the reasoning of the appellee and the Commonwealth Court we would then be forced to conclude that competitive bidding is not required where the Department is acting as a purchasing agent on behalf of the political subdivision or one of its agencies. This conclusion necessarily arises from their premise that Subsection (h) sets forth a distinct and separate power in the Department from that which was conferred under the preceding subsections.

Appellee and the Commonwealth Court attempted to avoid this dilemma by concluding that the competitive bidding requirements of Subsections (b) and (c) are nevertheless incorporated into Subsection (h) and therefore cover transactions carried out pursuant to Subsection (h). The fallacy in this reasoning is apparent. There is no basis for finding an incorporation of the competitive bidding provisions of the earlier subsection and yet rejecting the fundamental theme of those earlier provisions which restricted the power of purchase to items incidental to the needs of state government.

Under the theory urged by the appellant and the view accepted by this Court, this problem is non-existent. Since we view Subsection (h) as only allowing the political subdivision to share in transactions which are being entered into for state needs, the competitive bidding requirements of Subsections (b) and (c) would necessarily be operative. *See* Act of 1929, April 9, P.L. 177, art. XXIV, § 2403, as amended; 71 P.S. § 633 (Supp.1976–77).

9. Subsection (h) provides in pertinent part:
"Any political subdivision or authority desiring to participate . . . shall file with the Department . . . a cer-

urged by appellee and embraced by a majority of the Commonwealth Court would require a finding that the Legislature has expressed diametrically opposed policies in the same subsection. In one instance, it would appear to favor the political subdivision over the state agency by releasing the former from the requirements of competitive bidding and yet, at the same time, deny the political subdivision any voice in a determination as to the terms or specifications of that contract, a power which is expressly given to state agencies for whom the Department otherwise acts as a purchasing agent.[10] It is a fundamental rule of statutory construction that the General Assembly does not intend an absurd or unreasonable result. *See* 1 Pa.C.S.A. § 1922(1) (Supp.1976–77). *Commonwealth v. Horton,* 465 Pa. 213, 221, 348 A.2d 728, 732 (1975); *Westinghouse Broadcasting Co., Inc. v. Comm. Bd. of Finance and Revenue,* 14 Pa.Cmwlth. 59, 66, 321 A.2d 413, 416 (1974).

In addition, the analysis of the majority of the Commonwealth Court ignores the following language which also appears in Subsection (h):

"Any other administrative department authorized to make direct purchases of materials, supplies and equipment *may similarly* permit political subdivisions or authorities *to participate in or purchase off* purchase contracts entered into by such department." [11]

tified copy of an ordinance or resolution of its governing body . . . *agreeing that it will be bound by such terms and conditions as the department may, and as hereinafter specifically provided, shall, prescribe* . . . " *Id.* Section 2403(h) (Emphasis added).

10. *See Id.* Section 2403(e).

11. The format of Section 2403 is to place the Department in the position of being the purchasing agent for goods for state government. *See Id.* Section 2403(e). It does however, in enumerated instances, permit agencies of state government to make direct purchases without the intercession of the Department. *See Id.* Section 2403(g).

The language in connection with this portion of the subsection cannot be distinguished from that relating to the power vested in the Department to permit participation by the political subdivisions. Thus, the construction urged by appellee would be equally applicable to this provision. *Cf. Unemployment Compensation Board of Review v. Tickle,* 19 Pa.Cmwlth. 550, 559, 339 A.2d 864, 868 (1975). It would therefore follow, under the appellee's view, that a political subdivision has the right to have any agency of state government act on its behalf as purchasing agent for goods or supplies which that agency is authorized to purchase directly, even where the purchase is solely for the benefit of the political subdivision and not for the agency in question. Such a conclusion is obviously absurd since it would, in fact, transform state agencies into purchasing agents for the private benefit of political subdivisions. It cannot seriously be argued that the Legislature intended this result.

We believe that the Commonwealth Court majority fell into error in failing to give accurate meaning to the term "participate", a word upon which its interpretation permitting the purchase of these school buses rests. The appellee claims and the Commonwealth Court agreed that the political subdivision "participates" in a purchase contract when it merely requests the Department to act on its behalf and to procure specific items needed only by the political subdivision. To reach this result the meaning of the word "participate" must be distorted. Participate as defined by Black's Law Dictionary (4th ed. rev. 1968) is "to receive or have a part or share of; to partake of; experience in common with others; partake; . . ." In explicating the word participate, the Court of Appeals of Maryland stated:

"The word 'participate' . . . is not a word of art, but a word in common usage meaning to have part in and to share the benefits of some action or situation involving other persons." *Wharton v. Fideli-*

*ty-Balt. Nat. Bank,* 222 Md. 177, 158 A.2d 887, 893 (1960).

We disagree that a political subdivision "participates" in a contract when it merely requests articles for its own consumption. If the Department is permitted to purchase goods and supplies solely for the benefit of the political subdivisions and agencies created by them, those subdivisions and agencies are not participants in a transaction but rather the sole beneficiaries of that transaction.[12]

The appellee, recognizing this weakness, attempts to suggest that the participating requirement is fulfilled because the actual requisition was submitted to the Department by the Department of Public Education, a state agency. The fallacy of this argument is apparent on its face. The mere transmittal of a requested purchase through a state agency does not mean that either the transmitting agency or the requesting agency is, in fact, participating in the actual contract. The Department of Public Education is not "receiving" or "sharing" in the goods to be purchased but merely acting as a conduit through which the political subdivision communicates its needs to the Department.[13]

In our judgment, the intention of the Legislature in incorporating Subsection (h) is clear. It did not contemplate altering the primary responsibility of the Department as a purchasing agent on behalf of the state gov-

12. Appellee argues that for policy reasons we should permit the purchase of these school buses since the savings resulting from statewide bulk purchasing accrues to the Commonwealth taxpayers. This is a determination which only the Legislature can make, however, and is beyond the judicial function. If the Legislature deems it appropriate to authorize departments of state government to act as purchasing agents for political subdivisions for their own particular needs, it should say so in clear and unambiguous terms.

13. It is significant that the Department of Public Education has no authority to purchase on its own behalf the buses in question and, therefore, did not act in the capacity of a "requesting agency" within the meaning of Subsection (e). *Id.* Section 2403(e).

ernment, nor did it enlarge the category of items which the Department may purchase. It merely sought to allow the political subdivisions the opportunity to share in transactions inspired initially by state governmental needs where those needs happened to coincide with the needs of the political subdivisions. Equally as manifest is the distinction between the terms "purchase off" and "participate in". In the former instance, the Legislature intended to describe a situation in which the State, after acquiring supplies and articles for its own needs, accumulates a surplus which can be presently utilized by the political subdivisions. In such a case the political subdivisions are given an option under Subsection (h) of purchasing a portion of the surplus to satisfy their own requirements. In counter-distinction the term "participate in" gives to the political subdivision the opportunity, subject to Department permission, to have its requirements included initially when the Department is negotiating the purchase of an item otherwise needed by the state government.

Because we believe the Secretary of the Department of Property and Supplies exceeded his authority under the Act of April 29, 1929, we reverse the decree of the Commonwealth Court and remand for proceedings consistent with this opinion. Each party to bear own costs.

JONES, former C. J., did not participate in the decision of this case.

MANDERINO, J., did not participate in the consideration or decision of this case.

ROBERTS, J., concurs in the result.