398 A.2d 186
**In re JONES & LAUGHLIN STEEL CORPORATION,
Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1977.
Decided Feb. 7, 1979.

380

Gilbert J. Helwig, Pittsburgh, for appellant.

Allen H. Berkman, Pittsburgh, for appellees, Mr. and Mrs. Walter Barcheski, James D'Antonio, Harold B. Dally, Robert J. Donovan, William H. Ehrgott, Mr. and Mrs. Bert D. Pearson, Dr. and Mrs. Edward N. Peterson, Paul J. Piccirill and Alexander H. Scott.

Hewlett G. Skidmore, in pro. per., appellee, submitted a brief.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order entered in a dissenting shareholder appraisal action under sections 515 and 908 of the Pennsylvania Business Corporation Law.[1]

The action arose as a result of the merger of the Jones & Laughlin Steel Corporation (J & L Steel) into Jones & Laughlin Industries, Inc., II (JLI–II), a wholly owned subsidiary of Jones & Laughlin Industries, Inc. (JLI). The corporate parent of JLI, LTV Corporation, began its invest-

---

1. Business Corporation Law, Act of May 5, 1933, P.L. 364, §§ 515, 908, 15 P.S. §§ 1515, 1908.

ment in J & L Steel in 1968 with a tender offer to purchase J & L Steel common stock. LTV then transferred its stock in J & L Steel to its wholly owned subsidiary JLI. By March of 1969, JLI held approximately 63 percent of the J & L Steel common stock. Thereafter, JLI increased its ownership to 81 percent. By an Agreement and Plan of Merger dated October 22, 1974, it was proposed that J & L Steel be merged into JLI–II, thereby becoming a wholly owned subsidiary of JLI, with the common shareholders of J & L Steel receiving $29 per share in exchange for their stock. A proxy statement containing the terms of the plan was sent to the shareholders, and on November 22, 1974, after approval by the Board of Directors and a majority of the shareholders, the plan became effective. The following diagram may be helpful in understanding the relationship of the corporations both before and after the plan took effect:

The plan was filed with the Department of State, which awarded a certificate of merger.[2] Some 122 shareholders,

2. The certificate of merger was issued pursuant to section 905 of the Business Corporation Law, which provides:

The articles of merger or articles of consolidation, as the case may be shall be delivered to the Department of State which shall, upon filing the articles, issue to the corporation, or its representative, a certificate of merger or a certificate of consolidation, as the case may be.

15 P.S. § 1905.

representing approximately 25,365 [3] of 15,905,716 outstanding shares of J & L Steel common stock, objected to the merger. After a motion in Federal court for an injunction preventing the merger failed,[4] these shareholders dissented to the merger at the shareholder meeting.[5]

■ On December 20, 1975, J & L Steel sent a letter to each of the dissenters in which it offered them $29 per share for each share of common stock held by them[6]—the same amount offered under the plan of merger. This offer was refused, and on February 21, 1975, J & L Steel filed a

3. After the filing of the appraisal petition the number of dissenters changed because some elected to withdraw their dissents and certain additional record holders of stock were determined to be dissenting shareholders. A revised list filed with the appraisal court shows a reduction in the number of shares hold by dissenters to 21,429. The exact number of shareholders and the amount of shares held by them is not significant to the determination of the present appeal.

4. Owners of 25 shares of J & L Steel common stock moved in Federal court for an injunction preventing the November 22, 1974, meeting and the proposed merger. *Tanzer Economic Associates, Inc. v. Haynie*, 388 F.Supp. 365 (S.D.N.Y.1974). The grounds alleged in support of the motion for an injunction were that the proxy statement was materially misleading and that the proposed merger was fraudulent under sections 10(b) and 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(a). *Tanzer, supra* at 367. The court refused the injunction, holding that the movants' claims were insufficient to warrant such relief under the Federal Securities laws. *Id.* at 369. The court did not rule on the shareholders' rights under the Business Corporation Law.

5. Section 515 B of the Business Corporation Law requires dissenters who wish to perfect their appraisal rights to make a written objection prior to the commencement of the voting and to refrain from voting in favor of the plan at the shareholders meeting. 15 P.S. § 1515 B. Whether any or all of the dissenters in this case have so perfected their rights is not an issue on this appeal.

6. This letter constituted a written offer as required by section 515 D of the Business Corporation Law, which provides in pertinent part:
Within thirty days after such plan became effective, the corporation or in the case of a merger or consolidation, the surviving or new corporation, domestic or foreign, shall give written notice thereof to each dissenting shareholder who has made demand as herein provided, and shall make a written offer to each such shareholder to pay for such shares at a specified price deemed by such corporation to be the fair value thereof.
15 P.S. § 1515 D.

petition in the Court of Common Pleas of Allegheny County seeking an appraisal and forced sale of the shares held by the dissenters.[7] Several dissenters filed an answer to the petition, with "New Matter".[8] Typically,[9] the new matter alleged:

10. The purported merger pursuant to the so-called Merger Agreement is in violation of and is not authorized by Pennsylvania Law because:

(a) The public minority stockholders are accorded different, discriminatory treatment from The LTV Corporation through its wholly owned subsidiary JLI as the record owner of an 81% majority of the same class of stock by being forced to relinquish their interest in J & L Steel at a set price while The LTV Corporation receives all the common stock of J & L Steel;

(b) JLI–II was a paper corporation newly formed as a wholly owned subsidiary of JLI for the sole purpose of being a party to the purported merger, without any business operations or assets (except for the nominal sum of $1,000);

(c) The purported merger was not designed to, (by the Proxy Statement dated October 25, 1974 circulated by J & L Steel to all shareholders, including Respondents) did not claim to, and in fact did not accomplish any bona fide or legitimate business purpose of J & L Steel;

(d) The alleged merger was not designed to, according to the said Proxy Statement did not purport to, and in fact did not effect any change in the management, capital

7. The corporation may seek the appraisal by filing a petition in "the court of common pleas in the county . . . where the registered office of the corporation is located, praying that the fair value of such shares be found and determined." 15 P.S. § 1515 F.

8. Only a few dissenters filed answers containing new matter. The majority of dissenters filed answers requesting the court to appraise the shares and set the value higher than the $29 offered under the merger. The most frequently asserted value was $52.50 per share or higher.

9. Most of the dissenters whose answers contained new matter were represented by the same counsel.

structure, business, Articles of Incorporation, By-laws, debt structure, preferred stock, directors or officers of J & L Steel;

(e) The purposes of the purported merger were:

(1) to forcibly freeze out the public minority common shareholders of J & L Steel for only the cash payment of $29 per common share which price was unilaterally determined in a self-dealing non-arm's length transaction of JLI (owner of 81% of the common stock of J & L Steel) and its parent, The LTV Corporation;

(2) to acquire 100% of the beneficial interest of the common stock of J & L Steel in The LTV Corporation merely by voting the 100% interest of JLI–II held by its wholly owned subsidiary JLI and the 81% interest in J & L Steel also held by JLI in favor of the Merger Agreement;

(f) The fair value of J & L Steel common stock on November 21, 1974 (without regard to any depreciation or appreciation of the common stock in the consequence of the alleged merger) was substantially in excess of $29 per share.

11. The rights granted Dissenters under §§ 515, 908 of the Business Corporation Law are inadequate to protect the public minority stockholders of J & L Steel for the failure to provide for the future earnings and benefits which would have accrued to the public minority stockholders of J & L Steel but for the purported merger and freeze-out of such public minority stockholders by The LTV Corporation.

12. Respondents are entitled to and seek a finding and determination by this Honorable Court under the plenary and exclusive jurisdiction enumerated in § 515 F of the Business Corporation Law, that the Merger Agreement is invalid and ineffective to accomplish any purpose including the purported transformation of the rights of public minority common stockholders of J & L Steel from the rights of stockholders to the rights of Dissenters under §§ 515, 908 of the Pennsylvania Business Corporation Law and that the stockholders' rights of such public minority stockholders are

retained by them despite the provisions of the Merger Agreement.

WHEREFORE, Respondents pray this Honorable Court:

A. Find and determine that the Merger Agreement is invalid and ineffective to extinguish the shareholders' rights of the public minority stockholders of J & L Steel, and that all such rights are retained by Respondents and all public minority stockholders as of November 21, 1974, whether or not they have filed as Dissenters under § 515 of the Pennsylvania Business Corporation Law; or, in the alternative,

B. Assess damage for the wrongful action of the Corporation in depriving Respondents and all similarly situated public minority common stockholders of their common stock interests in J & L Steel; or, in the alternative,

C. Find and determine the fair value of the shares of common stock of J & L Steel held by the public minority stockholders, on November 21, 1974 (without regard to any depreciation or appreciation in consequence of the action taken) as directed under § 515 of the Pennsylvania Business Corporation [Law] . . . .[10] J & L Steel filed a reply to new matter, challenging the jurisdiction of the appraisal court to consider the matters alleged in new matter. The dissenters argued that the court did have jurisdiction on the theory that the appraisal action could not proceed unless the appraisal court first determined that there had been a valid merger. The court accepted this argument, and on March 29, 1977, entered an order and an accompanying opinion. In its opinion the court explained that the "precursive issue . . . is whether there was a valid merger." By its order the court directed:

10. The remaining paragraphs of the new matter contained a request that the court appoint an independent appraiser whose fees and expenses would be paid by J & L Steel, and that it hold a hearing at which the appraiser would set forth his determination of the asset, investment and market values of the J & L Steel stock. The new matter also requested that the costs of the proceedings, including the fees and expenses of experts retained by the dissenters, be assessed against J & L Steel.

> That a hearing be held on May 2, 1977 . . . limited to the issue of whether there was a valid merger . . . at which time all parties concerned may present evidence, arguments and briefs . . . .

J & L Steel filed this appeal pursuant to the Act of March 5, 1925, P.L. 23, § 1; 12 P.S. § 672, which affords an appeal from an order involving a question of jurisdiction.[11] *See generally McCrory Corp. v. Girard Rubber Corp.*, 225 Pa.Super. 45, 307 A.2d 435 (1973) *aff'd* 459 Pa. 57, 327 A.2d 8 (1974).

Before examining the jurisdictional issue it is important to note just what the allegations in the dissenters' new matter say. They do not allege a defense to the action for appraisal and forced sale, which would represent a request that the status quo be maintained;[12] rather, they assert a claim that the appraisal court should find the merger invalid because of conduct akin to fraud ("to forcibly freeze out" the dissenters at an unfair price), and ask the court to grant relief either in the form of rescission of the merger or in damages. J & L Steel's objection thus is that in an appraisal action under sections 515 and 908 of the Business Corporation Law, the

11. The dissenters have filed a motion to quash this appeal as interlocutory, arguing that the order of the lower court did not involve a question of jurisdiction but instead only directed a hearing at which the question of jurisdiction would be considered and decided. While not clear, the motion to quash apparently also requests this court to quash the appeal on the grounds that J & L Steel's arguments do not concern a question of jurisdiction. On appeals of this type, even if the ultimate decision of this court is that the appellant's arguments about jurisdiction are entirely without merit, the proper procedure is not to quash the appeal but to decide the issue of jurisdiction. *See Wechsler v. Newman*, 256 Pa.Super. 81, 90 n.7, 389 A.2d 611, 615, n.7. The motion to quash will therefore be denied.

12. Section 515 B of the Business Corporation Law prescribes the proper procedure for dissenting to the plan. Any shareholder who dissents and makes a demand upon the corporation as provided under that section "shall thereafter be entitled only to payment as in this section provided and shall not be entitled to vote or to exercise any other rights of a shareholder as to the shares with respect to which he dissents." 15 P.S. § 1515 B. For the dissenters to request the maintenance of the status quo would amount to a request that they have no rights as shareholders with respect to those shares upon which they dissent.

court lacks jurisdiction over a cause of action for rescission of a merger or damages.

J & L Steel argues that in enacting section 515 K of the Business Corporation Law the legislature intended to limit the subject matter jurisdiction of the lower court by confining a dissenting shareholder's rights to attack a merger to the right to appraisal set forth in the section. Section 515 K provides:

> Any shareholder, who desires to object to, or to dissent from, any proposed plan authorized under any section of this act, and where this act provides that shareholders so objecting or dissenting shall have the rights and remedies herein provided, shall be limited to the rights and remedies proscribed under this section, and the rights and remedies prescribed by this section shall be exclusive.

In *Witney v. Lebanon City*, 369 Pa. 308, 311–12, 85 A.2d 106, 108 (1952), the Supreme Court explained how to determine whether a court has subject matter jurisdiction:

> In *Zerbe Township School District v. Thomas*, 353 Pa. 162, 44 A.2d 566, we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,—whether the court had power to *enter upon the inquiry*, not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case*; that the Act of 1925 was not intended to furnish a short cut to a determination of the issues of law or fact raised by the pleadings and that it was not

concerned with matters going to the right of the plaintiff to *recover* on his cause of action but only with his right to have his cause of action *heard and determined.*

*Witney v. Lebanon City, supra,* 369 Pa. at 311–12, 85 A.2d at 108.

The question before this court, therefore, is whether by use of the phrase, "the rights and remedies prescribed by this section shall be exclusive", the legislature intended to limit the power of the appraisal court to "enter upon the inquiry" here demanded by the dissenters, *i. e.,* whether the merger was valid.

 In answering this question we must adhere to the established principle that any act of the legislature said to limit the jurisdiction of a court must be strictly construed. *See* 1 Pa.C.S. § 1921; *Commonwealth v. Barfod,* 160 Pa.Super. 59, 50 A.2d 36 (1946); *Kohn v. Philadelphia,* 156 Pa.Super. 112, 39 A.2d 531 (1944). In other words, if the legislature's intention to limit jurisdiction is not clear, we should construe the act in question as imposing no limitation. Conversely, however, if the legislature's intention to limit jurisdiction is clear, we should construe the act in question as imposing the limitation, for it is our duty to give effect to legislative intent. *See Casey v. Pennsylvania State University,* 463 Pa. 606, 345 A.2d 695 (1975).

 The phrase, "the rights and remedies prescribed by this section shall be exclusive," shows beyond reasonable question that the legislature intended that a dissenter's rights should *some* how be limited. As an initial proposition—that is, on the basis of reading only the Business Corporation Law—two possible conclusions might be reached regarding the nature of the intended limitation: either that the legislature intended to limit a dissenter's right to require the court to *enter upon the inquiry,* whether the merger was valid; or that the legislature was satisfied to have the court enter upon that inquiry, and intended that if the court

decided that the merger was invalid, its *power to grant relief* should be limited to ordering an appraisal of the value of the dissenter's stock. The first limitation would be of jurisdiction, the second, not. *Witney v. Lebanon City, supra.*

Before the enactment of modern corporation statutes such as the Business Corporation Law, the unanimous consent of all shareholders was necessary to authorize fundamental corporate changes such as mergers or consolidations. The possibility for abuse was manifest, for "any small shareholder, regardless of motive, could thwart the will of all the rest and object to changes merely to be bought off at his nuisance value." Ballantine & Sterling, Upsetting Mergers and Consolidations: Alternative Remedies of Dissenting Shareholders in California, 27 Cal.L.Rev. 644 (1939). Strike suits and other actions to prevent mergers were common. Note, 34 Col.L.Rev. 1308 (1934). With the recognition that mergers and other fundamental corporate changes were often in the corporation's interest, and sometimes were even necessary for its survival, corporation statutes were enacted providing that a merger could be authorized by a majority of the shareholders. While permitting the will of the majority to control the corporate decision, the statutes provided a dissenting shareholder with the opportunity to remove himself from a fundamental corporate change he did not wish to be subject to, by electing to withdraw from the corporation and receive the value of his shares as determined by an appraisal. *See* Ballantine & Sterling, *supra* ; Lattin, Remedies of Dissenting Stockholders Under Appraisal Statutes, 45 Harv.L.Rev. 233, 234–44 (1931).

Statutes granting the appraisal remedy, however, did not prevent some dissenters from attempting to frustrate the majority's desire for merger, for in some early cases the courts interpreted the statutory appraisal remedy as an alternative rather than exclusive remedy, thus permitting an action to rescind a merger on the grounds of unfairness or fraud. *See* Ballantine & Sterling, *supra.* While in fact

rescission was rarely granted, since the court tended to hold that if possible, an agreement should not be rescinded, the mere allowance or possibility of an action for rescission in practical effect tended to frustrate the will of the majority because it placed the plan of merger in doubt and delayed its final execution. In addition, allowance of the action tended to frustrate the desires of those who sought only the appraisal remedy because the decision to grant that remedy was delayed until the court rendered a decision on the merits of the action for rescission. *See* Ballantine & Sterling, *supra.*

When viewed against this background, the meaning of section 515 K of the Business Corporation Law becomes clear. By providing that the appraisal remedy "shall be exclusive" the legislature must have intended to avoid the difficulties—as it saw them to be—that would be experienced if the remedy was regarded as only an alternative to an action for rescission. The legislature's expectation, or hope, must have been that if it did not allow the court to entertain an action for rescission—in other words, if it limited the court's power of inquiry, *i. e.*, its jurisdiction, to making an appraisal—it would achieve the objective of preventing dissenting shareholders who objected to a merger from frustrating or impeding the will of both the majority, who wanted the merger, and of other dissenters, who wanted an appraisal.

The correctness of this analysis may be demonstrated by considering the only possible alternative construction of the section 515 K—*i. e.*, that the legislature was satisfied to have the court enter upon the inquiry into whether the merger was valid, and intended only that if the court found the merger invalid, its power to grant relief should be limited to ordering an appraisal of the value of a dissenter's stock. It is difficult to imagine why the legislature should have such an intention. An inquiry into whether a merger is valid may be a prolonged and expensive proceeding. Why should

the legislature say to a dissenter: "We will permit you to require the court to enter upon the inquiry into whether a merger is valid, but at the end of the inquiry, the most we will allow you to hope for is an order directing an appraisal of the value of your stock—which is the same order you would have gotten if you had never gone to the expense of requiring the court to inquire into the validity of the merger." To attribute to the legislature the intention of offering a dissenter such a choice may not be absurd, but it is close to absurd.[13] We must therefore refrain from the attribution, specially when we have available an alternative construction of the statute, which, especially in view of the historical background, makes much more sense. *See Schaefer v. Hilton*, 473 Pa. 237, 373 A.2d 1350 (1977); *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973).[14]

We recognize that the doctrine of exclusiveness has been subjected to some severe criticism by the commentators.

**13.** The dissenters have cited *Hubbard v. Jones & Laughlin Steel Corp.*, 42 F.Supp. 432 (W.D.Pa.1941), where the court stated:

> It is our opinion, therefore, that the merger in the instant case was valid, and that the plaintiffs' only remedy is that afforded by the statutory appraisal proceedings.
> *Id.* at 435.

The dissenters argue that this language demonstrates that the appraisal court must first determine that the merger is valid before the appraisal can proceed. This argument is incorrect. The issue in *Hubbard* was whether the Business Corporation Law authorized a recapitalization of preferred stock into a new series of preferred stock pursuant to a merger. Finding that it did, the court stated that the plan was valid—meaning authorized under the Business Corporation Law—and that appraisal was the only remedy. In this case, by contrast, there has been no claim that a cash merger is not authorized; the New Matter dissenters merely argue that they don't want to be bound by the merger. Their only remedy for this claim is the appraisal.

Neither does *Miller v. Steinbach*, 268 F.Supp. 255 (S.D.N.Y.1967), support the position of the dissenters. In *Miller* the court's holding was merely that section 515 K does not bar an action for fraud under the Federal Securities Laws.

**14.** Nothing in this opinion should be read as in any way reflecting on the issue of whether an action to enjoin a proposed merger before the vote may lie. Our decision is only that section 515 K clearly manifests the legislative intent to bar all actions except for an appraisal after the merger had been consummated.

*See e. g.* Lattin, Remedies of Dissenting Stockholders Under Appraisal Statutes, 45 Harv.L.Rev. 233 (1931); Vorenberg, Exclusiveness of the Dissenting Stockholder's Appraisal Right, 77 Harv.L.Rev. 1189 (1964). Moreover, recently in *Singer v. Magnovox Co.*, Del., 380 A.2d 969 (1977), the Supreme Court of Delaware reversed its prior case law and held that appraisal was not the exclusive remedy of dissenters to a merger. If the doctrine of exclusiveness were a product of our case law we might be inclined to re-examine the policy supporting it in light of the criticism directed against it. However, the question is one upon which our legislature has spoken; it has enacted the doctrine of exclusiveness, and has not been persuaded to abandon it. In these circumstances we must follow the legislature's directive, "for the enunciation of matters of public policy is fundamentally within the power of the legislature . . . [and] [i]t is not for us to legislate." *Lurie v. Republican Alliance*, 412 Pa. 61, 65, 192 A.2d 367, 370 (1963) *quoting Commonwealth ex rel. Fox v. Swing*, 409 Pa. 241, 186 A.2d 24 (1962).[15]

The motion to quash the appeal is denied, and the decision of the lower court is reversed and the case is remanded with instructions to proceed with the appraisal action.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision in this case.

[15]. J & L Steel has made other jurisdictional arguments. It has argued that 1 Pa.C.S. § 1504 precluded the lower court from subject matter jurisdiction. *See DeLuca v. Buckeye Coal Co.*, 463 Pa. 513, 345 A.2d 637 (1975); *Cathcart v. Crumlish*, 410 Pa. 253, 189 A.2d 243 (1963); *Colteryahn Sanitary Dairy v. Milk Control Commission*, 332 Pa. 15, 1 A.2d 775 (1938). Also, it has argued that the court lacked jurisdiction because of the failure to join necessary and indispensable parties. *See Huston v. Campanini*, 464 Pa. 147, 346 A.2d 258 (1975); *Insurance Co. of Penna. v. Lumbermen's Mutual Casualty Co.*, 405 Pa. 613, 177 A.2d 94 (1962). Finally, it has argued that doctrines of election and estoppel precluded the court from exercising jurisdiction. Because of our construction of Section 515 K we do not reach these arguments.