PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 10-4040

————

MITCHELL PARTNERS, L.P.,
                                        Appellant

v.

IREX CORPORATION;
NORTH LIME HOLDINGS CORP.;
W. KIRK LIDDELL; DAVID C. KLEINMAN;
PAUL J. ISAAC; JOANN M. JUDGE;
MICHAEL J. LARDNER; JOHN O. SHIRK;
THOMAS W. WOLF; LORI A. PICKELL;
JAMES E. HIPOLIT; JANEE. PINKERTON;
KENNETH G. STOUDT; N. THOMPSON WASHBURN

————

No. 10-4091

————

MITCHELL PARTNERS, L.P.

v.

IREX CORPORATION;
NORTH LIME HOLDINGS CORP.;
W. KIRK LIDDELL; DAVID C. KLEINMAMN;
PAUL J. ISAAC; JOANN M. JUDGE;
MICHAEL J. LARDNER; JOHN O. SHIRK;
THOMAS W. WOLF; LORI A. PICKELL;
JAMES E. HIPOLIT; JANE E. PINKERTON;
KENNETH G.STOUDT; N. THOMPSON WASHBURN,
                                        Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-08-cv-04814)
District Judge: Honorable James Knoll Gardner

Argued July 12, 2011

Before: SLOVITER, FUENTES, and GARTH, <u>Circuit Judges</u>

(Filed: August 31, 2011)

George W. Croner  (Argued)
Christina Donato Saler
Robert J. LaRocca
Kohn, Swift & Graf
Philadelphia, PA 19107

    Attorneys for Appellant/Cross-Appellees

Steven B. Feirson
Erin C. Fisher
Cheryl A. Krause   (Argued)
Elisa T. Wiygul
Dechert
Philadelphia PA 19104

    Attorneys for Appellees/Cross-Appellants

OPINION OF THE COURT

2

SLOVITER, *Circuit Judge.*

This matter comes to us under our jurisdiction over diversity of citizenship cases. 28 U.S.C. § 1332. Beginning with the First Judiciary Act of 1789, Congress authorized federal courts to hear suits "between a citizen of the State where the suit is brought, and a citizen of another State." § 11, 1 Stat. 73, 78 (1789). The grant of diversity jurisdiction to federal courts was controversial at its inception and continues to be. *See* Charles Alan Wright, *Law of Federal Courts* § 23 (5th ed. 1994). A byproduct of that jurisdiction is the requirement that the federal court must apply the law declared by the supreme court of the relevant state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941). If there is no applicable decision of the highest court of the state, then federal courts must make a prediction as to the law that would be applied were the issue before it, an issue that has occupied many judges and courts.[1] The issue, however, does arise in the present case and the Supreme Court has made clear that a federal court is not free to decline jurisdiction in a diversity case merely because the issue is a difficult one.

Therefore, we must decide the important issue of Pennsylvania corporate law that the Supreme Court of Pennsylvania has not yet explicitly addressed. The issue is whether the Pennsylvania statute providing for appraisal of the value of the shares of minority shareholders who are "squeezed out" in a cash-out merger precludes all other remedies. In this case, a substantial minority shareholder of Irex Corp., that is, Mitchell Partners, L.P., which is participating in an appraisal proceeding in state court, also asserted a post-merger claim for damages in federal district court in Pennsylvania, alleging breach of fiduciary duties by the majority shareholders in connection with Irex's cash-out

---

[1] One reasonable test suggested for the federal judge is "[w]hat would be the decision of reasonable intelligent lawyers, sitting as judges of the highest [state] court, and fully conversant with [that state's] 'jurisprudence'?" *Cooper v. Am. Airlines, Inc.*, 149 F.2d 355, 359 (2d Cir. 1945).

3

merger with North Lime Holdings. The District Court held that the appraisal remedy was exclusive and therefore dismissed Mitchell Partners' complaint in its entirety. Mitchell Partners filed this timely appeal.

## I.[2]

Appellant Mitchell Partners, L.P., a California limited partnership, was formerly a minority shareholder of Irex Corporation ("Irex"), owning more than 11,000 shares of Irex common stock. Irex was a privately held Pennsylvania corporation with its shares traded over the counter and not on a public stock exchange. Irex was the parent corporation of several companies that installed and maintained mechanical insulation, sheet metal, and passive fire protection. Irex's companies also removed asbestos, lead, and other hazardous materials.

Irex was governed by a board of directors and several corporate officers. Collectively, the directors and officers owned approximately 43% of Irex stock. With the exception of two officers, the Irex directors and officers are all defendants in this case.[3]

On April 26, 2006, defendant W. Kirk Liddell, President, CEO and Chairman of the Irex board, sent a confidential memorandum to the directors and officers

---

[2] Because this is an appeal of an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we must adopt the facts as alleged in the complaint.

[3] Specifically, the complaint names David Kleinman, Paul Isaac, Joann Judge, Michael Lardner, John Shirk, and Thomas Wolf as members of the Irex board and defendants. The complaint lists Lori Pickell and James Hipolit as Irex officers and W. Kirk Liddell as President, CEO, and Chairman of the Board; also all defendants. Irex had two other officers, David Andrew and Dennis Gray, who are not defendants to this case.

4

outlining a plan, referred to as the North Lime Proposal, that was designed to enhance their own net worth by consolidating ownership of Irex among themselves and a handful of other "participating" shareholders by buying out the minority Irex shareholders. The directors, officers, and certain other favored participating shareholders are the insider or North Lime shareholders. Under the North Lime Proposal, the insider shareholders were to create a separate holding company, North Lime Holdings Corporation, under the insiders' exclusive ownership and control. North Lime would then acquire 100% of Irex through a cash-out merger between Irex and a wholly-owned North Lime subsidiary, Irex Acquisition Corporation.

Specifically, the North Lime Proposal detailed that prior to the merger, the insider shareholders would exchange their Irex stock for North Lime stock. By so doing, North Lime would obtain majority ownership of Irex. At the same time, the insider shareholders would retain ownership of Irex indirectly through their ownership of North Lime.[4] Under the terms of the merger, the non-participating, non-insider minority shareholders would be given cash in exchange for their ownership interest in Irex. The defendants proceeded as planned.

Once Liddell had garnered sufficient insider shareholder support for the North Lime Proposal, the insider defendants, through defendant Lori Pickell, Irex's CFO, informed all Irex shareholders by mail of the proposed merger. The letter explained that "[a] group of Irex shareholders holding approximately 50% of the outstanding Irex shares will contribute their shares to a new holding company [North Lime Holdings]; . . . [that] Irex will become a subsidiary of [North Lime]; . . . [and that] Irex shareholders, other than [North Lime] shareholders, will receive $60 per share in cash in exchange for their Irex shares." App. at 183.

---

[4] Indeed, by eliminating the minority shareholders, the insider shareholders would not only retain their ownership interests in Irex, they would increase their proportional ownership share.

5

A week later, Mitchell Partners wrote to Pickell and lodged its opposition to the proposed merger, which it viewed as a squeeze out of minority shareholders at an unfair price.

On May 31, 2006, a special meeting of the Irex board was convened to discuss the North Lime Proposal. At the meeting, the board amended its bylaws to add three additional directors who were supposedly "disinterested" in the North Lime Proposal. That is, unlike the rest of the board, they had no financial stake in the outcome and did not sit on either side of the proposed merger. These "disinterested" board members would form a Special Committee charged with reviewing and commenting on the fairness of the proposed merger and independently negotiating with North Lime on behalf of the minority shareholders.

However, as alleged in the complaint, rather than being neutral, the selected Special Committee members had strong ties to the North Lime insiders: two were former Irex directors and the third was a businessman who provided services to one or more of the insider defendants.[5] In June 2006, the Irex bylaws were once again amended to indemnify the Special Committee from liability for actions taken in the course of their evaluation of the proposed merger.

The complaint alleges that once the Special Committee began its review, the insider directors influenced and controlled the Special Committee's consideration of fair value for the minority stock in several ways, thereby breaching the fiduciary duties they owed to minority shareholders. First, the insiders influenced the Special Committee and its financial advisor, Curtis Financial Group ("Curtis"), to accept the conclusion that the bankruptcy filed by one of Irex's subsidiaries, AC&S, had greatly depressed the value of Irex stock. AC&S had filed for bankruptcy in 2002 because it was the subject of approximately 100,000 unresolved asbestos litigation claims. But in 2000, AC&S had initiated litigation

---

[5] The three Special Committee members, Jane Pinkerton, Thomas Washburn, and Kenneth Stoudt, are also named defendants in this case.

6

of its own against its insurer, Travelers Indemnity Company ("Travelers"), for coverage of those claims. By the summer of 2006, the insiders knew or had reason to know that the litigation between AC&S and Travelers was likely to be resolved by a settlement highly favorable to AC&S, positively impacting the value of Irex stock. Notwithstanding, a key Irex board member and North Lime participant, Joann Judge, repeatedly urged that the Special Committee be comprised only of people who understood "the status of the AC&S bankruptcy and its impact on Irex share value." App. at 57. For three months, the insider defendants allegedly urged the Special Committee to apply a substantial "asbestos discount" in the recommended price. Indeed, at times the Special Committee was informed by Liddell and other defendants that the asbestos discount was "the most significant factor impacting the valuation of the Irex common stock." App. at 62. Yet, the Special Committee's financial advisor, Curtis, never received a report or assessment regarding the settlement negotiations with Travelers.

Second, defendant Liddell, acting simultaneously as CEO of both Irex and North Lime, controlled the flow of information that the Special Committee received. Snyder & Co. was the investment bank that had historically provided appraisals of Irex stock for purposes of valuing Irex employees' 401(k) plans. But Snyder was retained by North Lime as an advisor for purposes of the merger and was serving in that capacity when Liddell arranged to have a Snyder representative brief the Special Committee on the value of Irex's stock. In addition to this alleged conflict of interest, Liddell insisted that he meet with the Committee to explain the proposed transaction before anyone from Snyder met with the Committee. Thereafter, he was present when Snyder briefed the Committee in July 2006. Curtis was excluded from the Committee's meeting with Snyder.

In August 2006, Curtis presented its initial analysis of the proposed merger to the Special Committee. Based principally on information provided by the North Lime insiders and without independent verification, Curtis valued the stock at between $65 and $67 per share. Included in this

7

price was a 22.5% asbestos discount (because of the pending asbestos actions against an Irex subsidiary), which failed to take into account the likelihood of settlement with Travelers. The valuation was also based on an assumption of 3% annual projected growth. That figure was significantly smaller than Irex's historical rate of growth. In fact, between 2001 and 2005, Irex experienced annual compound revenue growth that exceeded 14%.

Compounding Curtis' undervaluation, the Special Committee used the $67 per share valuation as the starting point for negotiations, thereby setting a ceiling on the price the minority shareholders would receive. By this time, mid-August 2006, one or more of the insider defendants were directly involved in the Travelers settlement negotiations. Despite their knowledge of the imminent settlement, they sought to have the Special Committee increase the asbestos discount Curtis had used in its valuation. Curtis and the Special Committee promptly agreed and decreased the proposed price to $66 per Irex share.

Shortly thereafter, on August 31, 2006, Irex and North Lime entered into a Merger Agreement based on the $66 per share price. The agreement was subject to shareholder approval and, on September 11, 2006, a proxy statement was distributed to Irex shareholders whereby they were informed that the Special Committee had determined that $66 per share was a fair price and that the merger was "in the best interest of Irex." App. at 69.

In addition to the above alleged breaches of fiduciary duties, Mitchell Partners contends that the proxy statement (1) omitted material facts concerning Curtis' valuation analysis and fairness opinion, (2) omitted Irex's internal management projections used by Curtis and never independently verified, (3) omitted any factors that might weigh against the transaction, (4) falsely described the transaction as substantively and procedurally fair to minority shareholders, and (5) misrepresented material facts concerning the status of the asbestos litigation and AC&S bankruptcy. In fact, in July 2007, less than a year after the plan was presented to the

8

shareholders, Liddell announced that AC&S had settled with Travelers for $449 million—terms that Liddell described in the press as "good news for AC&S." App. at 70.

At the time of the shareholder vote in October 2006, North Lime held 71% of outstanding Irex shares through the exchange of Irex stock for North Lime stock and/or the grant of proxies. On October 10, 2006, it voted those shares in favor of the merger. Mitchell Partners and one other shareholder dissented and did not vote in favor of the merger. The transaction closed ten days later on October 20, 2006.

On February 7, 2007, Irex filed an appraisal action against these dissenters in the Pennsylvania Court of Common Pleas. The suit averred that Mitchell Partners had dissented from the merger and that the fair value of the shares was $66 per share. Irex requested that the court confirm this price. Mitchell Partners counters that the fair value was approximately $181 per share. The appraisal proceeding is ongoing.

Based on the foregoing facts, Mitchell Partners filed this putative class action complaint on October 8, 2008, alleging breach of fiduciary duty against Irex, North Lime, and the individual insider directors/officers (count 1), breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the Special Committee members (count 2), and unjust enrichment against Irex, North Lime, and the individual insider directors/officers (count 3). The defendants moved to dismiss all counts for failure to state a claim. The District Court granted the motion. Mitchell Partners appeals.

## II.[6]

---

[6] The District Court had jurisdiction of this diversity action pursuant to 28 U.S.C. § 1332. We have jurisdiction over Mitchell Partners' direct appeal pursuant to 28 U.S.C. § 1291 because the District Court issued a final order dismissing all claims as to all parties and entering judgment in favor of the defendants. "We review de novo a district court's decision to dismiss the complaint for failure to state a

9

As to count 1, the parties do not dispute that as a general matter of Pennsylvania state law, "[i]t has long been recognized that majority shareholders have a duty to protect the interests of the minority." *Ferber v. Am. Lamp Corp.*, 469 A.2d 1046, 1050 (Pa. 1983). "[M]ajority stockholders occupy a quasi-fiduciary relation toward the minority which prevents them from using their power in such a way as to exclude the minority from their proper share of the benefits accruing from the enterprise." *Hornsby v. Lohmeyer*, 72 A.2d 294, 298 (Pa. 1950) (citation omitted). Indeed, the Supreme Court of Pennsylvania recognized in *In re Jones & Laughlin Steel Corp. (Jones II)*, "that a freezing out of minority holders with the purpose of continuing the business for the benefit of the majority holders is a violation of the fiduciary duty owed to minority shareholders by the majority shareholders." 412 A.2d 1099, 1103 (Pa. 1980) (internal quotations and citations omitted).

Applying the facts alleged in the complaint to this standard, the District Court held that Mitchell Partners had stated a cognizable claim for breach of fiduciary duty against North Lime and the other insider, majority shareholders. However, the District Court held that because the breach of fiduciary duty lawsuit was brought after the merger had been consummated, it was barred by Pennsylvania's appraisal statute, which the District Court reasoned provided the sole post-merger remedy to dissenting minority shareholders. Therefore, the District Court dismissed the entire complaint.[7]

---

claim upon which relief may be granted." *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 158 (3d Cir. 2010).

[7] The District Court also provided alternative grounds for the dismissal of certain claims.

As to count 1, the District Court dismissed the breach of fiduciary duty claim against Irex because a corporation, as an entity itself, does not have a fiduciary duty to shareholders. Mitchell Partners does not challenge the dismissal of this claim against Irex.

10

Pennsylvania law provides a shareholder who dissents to a merger the right "to obtain payment of the fair value of his shares." 15 Pa. Cons. Stat. § 1571. This appraisal remedy is to be pursued in a state court action initiated by the corporation against the dissenting shareholder after the shareholder has dissented and after the merger has been consummated. *Id.* § 1579. The relief provided by the appraisal remedy is limited to the fair valuation and payment of the dissenter's shares. *Id.* § 1571. Fair value is defined as

---

As to count 2, which alleged that the Special Committee defendants possessed and breached an independent fiduciary duty as well as aided and abetted the majority shareholders' breach, the District Court dismissed the independent fiduciary duty claim because there was no such duty. Mitchell Partners does not challenge that decision. With regard to aiding and abetting, the District Court held that such a claim was cognizable under Pennsylvania law, but dismissed the claim without prejudice because Mitchell Partners' factual allegations were inadequate. Mitchell Partners does not challenge this decision, but instead asserts it will seek leave to amend on remand.

The defendants attempted to cross-appeal, arguing that because the District Court evaluated their alternative grounds for dismissal and, in some instances, ruled against the defendants, they are aggrieved parties entitled to cross-appeal. This is not so. "Ordinarily, a party may appeal only if aggrieved by the district court's *judgment.*" *Armotek Indus. Inc. v. Emp'rs Ins. of Wausau*, 952 F.2d 756, 759 n.3 (3d Cir. 1991). Although, as outlined above the District Court's opinion contained rulings which were adverse to the defendants, the District Court did not enter judgment in favor of the plaintiff. To be clear, we leave untouched the District Court's rulings that, absent the appraisal statute, Mitchell Partners has adequately stated a claim in count 1 for fiduciary breach against the majority shareholders, that count 1 is not barred by the statutes of limitations, and that aiding and abetting breach of fiduciary duty, count 2, is a cause of action under Pennsylvania law.

11

"[t]he fair value of shares immediately before the effectuation of the corporate action to which the dissenter objects, taking into account all relevant factors, but excluding any appreciation or depreciation in anticipation of the corporate action." *Id.* § 1572.

In another provision, Pennsylvania law limits the relief a dissenting shareholder may obtain outside of the statutory appraisal remedy provided by 15 Pa. Cons. Stat. § 1571 *et seq.* Specifically, 15 Pa. Cons. Stat. § 1105, titled "Restriction on equitable relief," provides:

> A shareholder of a business corporation shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed plan or amendment of articles authorized under any provision of this subpart, nor any right to claim the right to valuation and payment of the fair value of his shares because of the plan or amendment, except that he may dissent and claim such payment if and to the extent provided in Subchapter D of Chapter 15 (relating to dissenters rights) where this subpart expressly provides that dissenting shareholders shall have the rights and remedies provided in that subchapter. Absent fraud or fundamental unfairness, the rights and remedies so provided shall be exclusive. Structuring a plan or transaction for the purpose or with the effect of eliminating or avoiding the application of dissenters rights is not fraud or fundamental unfairness within the meaning of this section.

Although this provision clearly imposes some restrictions on the relief available to a dissenting shareholder outside of the appraisal remedy proceeding, the extent of that restriction is disputed and the subject of this litigation. The District Court adopted the position of the defendants and concluded that this provision and related Pennsylvania Supreme Court

12

jurisprudence preclude post-merger suits for damages. Mitchell Partners concedes, as it must, that Section 1105 prohibits dissenting shareholders from enjoining the merger, absent fraud or fundamental unfairness, but asserts that nothing limits dissenters' ability post-merger to seek common law damages based on a breach of fiduciary duty.

Admittedly, the language of Section 1105 is difficult to dissect. The first sentence, divided into its constituent parts, discusses two forms of relief and when each is available. First, it provides that a shareholder "shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed" merger. Thus, a dissenting shareholder may only seek to enjoin a merger if there is fraud or fundamental unfairness. Second, that sentence provides that a shareholder shall not have "any right to claim the right to valuation and payment of the fair value of his shares because of the [merger], except that he may dissent and claim such payment" as provided by the statutory appraisal remedy. Accordingly, the right to valuation may only be pursued in the statutory appraisal proceeding.

The second sentence of Section 1105, which modifies both the availability of injunctive relief and statutory appraisal described in the first sentence, provides that "[a]bsent fraud or fundamental unfairness, the rights and remedies so provided shall be exclusive." The application of this second sentence to the prior sentence creates some confusion and raises the questions: exclusive to what and exclusive against whom? As the Pennsylvania Supreme Court has suggested when interpreting Section 1105's substantively similar predecessor, the appraisal remedy is not the only remedy available—just the only remedy in certain contexts. The Pennsylvania Superior Court stated in *In re Jones & Laughlin Steel Corp. (Jones III)*, 477 A.2d 527, 532 (Pa. Super. Ct. 1984), that, "[t]he [Supreme Court of Pennsylvania] . . . recognized [in *Jones II*] that dissenters could seek relief for unfair or fraudulent corporate actions in separate actions. Thus, our highest court has recognized in this very case that separate and distinct causes of action may be pursued as [a] result of the same purchase offer." The

13

statute also leaves unresolved the meaning of fraud or fundamental unfairness. *See Barter v. Diodoardo*, 771 A.2d 835, 839 (Pa. Super. Ct. 2001) (noting that the statute does not define fraud or fundamental unfairness).

Though the current version of Section 1105 was enacted by the Pennsylvania legislature in 1988, both parties agree that it did not substantively alter its predecessor statute which was divided into two separate provisions, 15 Pa. Stat. Ann. §§ 1005E and 1515K. [8] Accordingly, although few cases have touched on the meaning of Section 1105, we will continue to take guidance from those cases interpreting the predecessor provisions, §§ 1005E and 1515K.

---

[8] Indeed, the Official Source Note to the 1988 amendment describes Section 1105 as "[s]ubstantially a reenactment of act of May 5, 1933 (P.L. 364, No. 106), §§ 5E and 515K (15 P.S. §§ 1005E and 1515K), except [the] last sentence which is new," and not relevant here.

15 Pa. Stat. Ann. § 1515K provided: "Any shareholder, who desires to object to, or to dissent from, any proposed plan authorized under any section of this act, and where this act provides that shareholders so objecting or dissenting shall have the rights and remedies herein provided, shall be limited to the rights and remedies prescribed under this section, and the rights and remedies prescribed by this section shall be exclusive."

15 Pa. Stat. Ann. § 1005E provided: "[A] shareholder shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed plan or amendment of articles authorized under any section of this act, or to claim the right to valuation of and payment for his shares because of any such plan or amendment except that he may dissent and claim payment if and to the extent provided in section [1]515 of this act where this act expressly provides that dissenting shareholders shall have the rights and remedies provided in section [1]515 of this act."

14

As this case presents an issue of Pennsylvania state law, we look first to the jurisprudence to the Supreme Court of Pennsylvania. We are, of course, also bound by our own precedent interpreting state law so long as it has not been contradicted by the Supreme Court of Pennsylvania. To the extent no directly controlling precedent exists, we must predict what the Supreme Court of Pennsylvania would hold. *See Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

We start with an attempt to keep up with the Joneses. In *In re Jones & Laughlin Steel Corp. (Jones I)*, the minority shareholders of J&L Steel were squeezed out after the merger of J&L Steel with another entity owned by the majority shareholders. 398 A.2d 186, 187 (Pa. Super. Ct. 1979). Some of the minority shareholders dissented from the merger at the shareholder meeting. After the merger was consummated, an appraisal proceeding was initiated by J&L Steel as required under the Pennsylvania appraisal statute. In the appraisal proceeding, the dissenting minority shareholders raised additional claims against J&L Steel, alleging that the squeeze out merger was unfair and invalid, warranting rescission of the merger or damages. *Id.* at 188-89. J&L Steel objected, arguing that the appraisal court lacked jurisdiction over those claims.

In *Jones I*, the Superior Court of Pennsylvania held that the appraisal statute in effect at the time, Section 1515K, precluded an appraisal court from exercising its jurisdiction to entertain the minority shareholders' claim that the merger was invalid. *Id.* at 192. The court analyzed the history and rationale for the statutory changes in connection with corporate mergers, and stated:

> With the recognition that mergers and other fundamental corporate changes were often in the corporation's interest, and sometimes were even necessary for its survival, corporation statutes were enacted providing that a merger could be authorized by a majority of the shareholders.

15

*Id.* at 191. On the other hand,

> the statutes provided a dissenting shareholder with the opportunity to remove himself from a fundamental corporate change he did not wish to be subject to, by electing to withdraw from the corporation and receive the value of his shares as determined by an appraisal.

*Id.* The court reasoned that "[t]he legislature's expectation, or hope, must have been that if it did not allow the [appraisal] court to entertain an action for rescission–in other words, if it limited the court's power of inquiry, *i.e.*, its jurisdiction, to making an appraisal–it would achieve the objective of preventing dissenting shareholders who objected to a merger from frustrating or impeding the will of both the majority, who wanted the merger, and of other dissenters, who wanted an appraisal." *Id.* at 192. In so reasoning, the court noted that the appraisal remedy was limited to an appraisal of the value of the dissenter's stock. The court concluded that if the legislature had intended the appraisal procedure to be used to declare a merger invalid, surely the remedy would have been more expansive. *Id.*

The court made two other statements significant for our purposes. First, it indicated that the appraisal statute does not bar an action for fraud under federal securities laws. *Id.* at 192 n.13. Thus, notwithstanding the use of the word "exclusive," the appraisal remedy may not be exclusive of all other actions. Second, the court noted that "[n]othing in this opinion should be read as in any way reflecting on the issue of whether an action to enjoin a proposed merger before the vote may lie. Our decision is only that [the appraisal statute] clearly manifests the legislative intent to bar all actions except for an appraisal after the merger had been consummated." *Id.* at n.14. This statement, in contrast to the first, supports the defendants' contention that the current suit is barred. However, we are reluctant to put too much stock in this language both because it occurs in a footnote and because the

16

comment is part of the court's caveat noting that it takes no position on whether an injunction may be brought pre-merger, as opposed to afterwards.

Importantly, the court in *Jones I* also recognized that Delaware had recently reversed its prior case law and held that appraisal was not the exclusive remedy of dissenters to a merger. Nonetheless, the court stated that "[i]f the doctrine of exclusiveness were a product of our case law we might be inclined to re-examine the policy supporting it in light of criticism directed against it. However, the question is one upon which our legislature has spoken; it has enacted the doctrine of exclusiveness, and has not been persuaded to abandon it." *Id.* at 193. Accordingly, the court held that the appraisal court only had authority to consider the fair value of the dissenters' shares, and not the new claims raised by the dissenters.

*Jones I* was the decision of Pennsylvania's intermediate appellate court. In *Jones II*, the Supreme Court of Pennsylvania affirmed. 412 A.2d 1099. The Court characterized the issue as follows: "[t]he crucial question is whether the legislature intended the [the statutory appraisal remedy] to be the exclusive post-merger remedy available to dissenting shareholders." *Id.* at 1102. The Court held that "[o]n its face, the exclusive remedy provided dissenting shareholders does not include the right to challenge the validity of the merger in the appraisal proceeding." *Id.* The Court noted that freezing out minority shareholders for the sole benefit of the majority was a violation of the majority's fiduciary duty, but that the existence of that cause of action was "insufficient to confer jurisdiction upon an appraisal court." *Id.* at 1103. Rather, the fiduciary duty cases "merely recognize the equitable power of a court of common pleas in an appropriate proceeding, to enjoin the unfair use of power by the majority stockholders for their selfish interest to the detriment of the minority stockholders." *Id.* However, the Court was careful to note that, in its view, limiting the appraisal proceeding to questions of fair value did not keep plaintiffs from seeking to enjoin the merger before it was

17

consummated based on fraud or fundamental unfairness. *Id.* at 1104.

That said, the Court emphasized that its decision "does not condone the manner in which appellants and other minority shareholders were deprived of their equitable interest in J&L. We are not unmindful of the grave unfairness and fraud frequently present in mergers of this type, especially where there is a 'cash-out' of the minority shareholders." *Id.* (citation omitted). That concern did "not change the [court's] view that appellants' post-merger remedies were limited to the appraisal of the fair value of their stock." *Id.*

Based on *Jones II*, the defendants argue, and the District Court concluded, that the Supreme Court of Pennsylvania has held that post-merger, a minority shareholder's only relief is the fair value of the stock as determined in the appraisal proceeding. Mitchell Partners contends that *Jones II* merely held that the sole issue over which the court in an appraisal proceeding had jurisdiction was the appraisal itself. In fact, that was the narrow question presented. Further, Mitchell Partners persuasively contends that the *Jones* cases recognized, at least in a broad sense, that separate and distinct causes of actions may be pursued against the majority shareholders. However, as the defendants argue, and as the District Court agreed, the other actions approved of in *Jones I & II* were instituted pre-merger, whereas the fiduciary breach claim at issue here was initiated post-merger.

There is some merit to both arguments. Mitchell Partners is correct that in the technical sense, *Jones* only held that the appraisal proceeding itself was limited to issues of fair value, and that efforts to enjoin the merger in the appraisal proceeding were not permitted. *Jones* neither considered nor discussed whether minority shareholders could seek damages post-merger for a breach of the defendant's fiduciary responsibility. Moreover, the exclusivity provision seems to focus on limiting equitable

18

relief designed to forestall the merger. Indeed, it is titled "Restrictions on equitable relief."[9]

Defendants emphasize some of the broader pronouncements contained in the *Jones* cases, but the narrow issue of whether a suit for damages based on breach of fiduciary duties may be brought post-merger was not directly presented to the Supreme Court. Defendants have not called to our attention any decision of the Pennsylvania appellate courts controlling the issue before us.

## III.

Absent a controlling Pennsylvania precedent, we turn to our own jurisprudence. In *Herskowitz v. Nutri/System*, 857 F.2d 179 (3d Cir. 1988), minority shareholders filed a suit pre-merger seeking damages for breaches of fiduciary duties against Nutri/System and its Board of Directors based on their unfair self-dealing. Defendants argued that the appraisal statute precluded the fiduciary duty claim. We disagreed and construed the holdings of the *Jones* decisions to be "only that an appraisal court lacks jurisdiction to consider the fairness of the underlying merger." *Id.* at 186. We noted that *Jones II* "took pains to point out that [the appraisal remedy] preserved shareholder remedies other than statutory appraisal." *Id.* Indeed, we noted that *Jones II* tacitly approved of a separate pre-merger class action seeking injunctive relief and/or damages both under federal law and Pennsylvania state law. *Id.* at 186-87 (noting that *Jones II* approved of the suit in *Tanzer Econ. Assocs., Inc. v. Haynie (Tanzer I)*, 388 F. Supp. 365 (S.D.N.Y. 1974)); *see also Tanzer v. Haynie (Tanzer II)*, 405 F. Supp. 650, 653 (S.D.N.Y. 1976) (explaining that "[t]he merger itself is attacked as illegal under the Pennsylvania

---

[9] "It is a well-settled rule of statutory interpretation that titles and section headings cannot limit the plain meaning of statutory text when that text is clear." *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of the City of Newark*, 344 F.3d 335, 348 (3d Cir. 2003). However, in this case, the "plain meaning" of the text is not clear.

19

Business Corporation Law, in that it seeks to freeze out the public minority shareholders").

Accordingly, we held that "it is a clear holding that in Pennsylvania the statutory appraisal cause of action coexists with common law causes of action. Indeed no other rules makes sense, for the appraisal remedy is available even absent misconduct of corporate officials. It was hardly enacted to provide a shield for misconduct." *Herskowitz*, 857 F.2d at 187. The *Herskowitz* decision then predicted "that if faced with the issue the Pennsylvania Supreme Court would reject the defendants' interpretation of [the appraisal statute] as a bar to other causes of action for breach of fiduciary duty or misrepresentation in a cash-out merger." *Id.*

Accordingly, the holding and language of *Herskowitz* support Mitchell Partners' claim that its breach of fiduciary duty claim can go forward. *Herskowitz* narrowly interpreted *Jones* as limiting the appraisal court's jurisdiction, but not excluding separate fiduciary duty suits. However, as the defendants point out, *Herskowitz* did not deal with a fiduciary duty claim raised post-merger. In fact, it appears that no Pennsylvania or Third Circuit case specifically holds that a minority shareholder is entitled to bring a common law breach of fiduciary claim post-merger, though it is clear based on *Herskowitz* that a shareholder is entitled to do so pre-merger.[10]

Nevertheless, based on the language of Section 1105, *Jones*, and *Herskowitz*, we predict that the Supreme Court of Pennsylvania would permit a post-merger suit for damages

---

[10] That said, in another Third Circuit case, *Warden v. McLelland*, 288 F.3d 105 (3d Cir. 2002), we held that a minority shareholder was entitled to bring a claim for equitable relief pre-merger, and distinguished the facts from *Jones* based on the pre-merger suit. We characterized the pre-merger nature of the suit as a "critical distinction." *Id.* at 115. But *Warden* dealt with an equitable suit, not merely a suit for damages, and thus does not speak to the issue presented in this case.

20

based on the majority shareholders' breach of their fiduciary duties. There are several reasons why. First, as discussed above, the specific holding of *Jones* was merely that no post-merger equitable claim could be filed in an appraisal proceeding. *Jones* did not hold that such a suit could not be instituted separately. Second, nothing in the appraisal statute itself distinguishes between pre-and post-merger relief. Therefore, there is no reason why common law causes of action such as fiduciary breach should be permitted pre-merger, as we held in *Herskowitz* and the Supreme Court implicitly authorized in *Jones II*, but barred post-merger. Returning to the rationale for the statute as discussed in *Jones I*, it is to prevent a dissident group of shareholders from blocking a merger desired by the majority shareholders. A post-merger damages action would not contravene that goal.

Third, as argued persuasively by Mitchell Partners, the appraisal remedy only permits dissenters to recover from the corporation. Ergo, the appraisal remedy's corresponding limitations also only apply to suits against the corporation. This conclusion is also consistent with the purpose motivating Section 1105—the limitation on injunctions was intended to allow the merger to proceed and avoid suits which stymied corporate consolidation and growth. In contrast, forbidding fiduciary duty suits against majority shareholders does not run the risk of thwarting the merger, particularly if the suit is brought after the merger is consummated. Barring such suits would do little more than insulate alleged tortfeasors from responsibility for their conduct, an outcome which the Court in *Jones II* feared.[11]

---

[11] The analysis of *Miller v. Steinbach*, 268 F. Supp. 255 (S.D.N.Y. 1967) supports this conclusion. There, the court held that:

> to conclusively bind a corporate shareholder to a plan of merger where that shareholder has been lulled into a false sense of security because of the issuance of a glowing and misleading proxy statement, would be to reach a

21

Related to the third reason, is the fourth: namely, that the appraisal remedy's evaluation of fair value is more limited than the damages available for fiduciary breaches—breaches that may not become evident until after the merger has been consummated.[12] Defendants assert that, because damages in a suit for breach of fiduciary duty would be measured by determining the amount by which minority shareholders were underpaid for their stock, Mitchell Partners is simply seeking a second forum in which to "claim the right to valuation and payment of the fair value of [its] shares." Yet although Pennsylvania has explicitly followed Delaware's lead and expanded the original definition of fair value so as to permit consideration of "all relevant factors," fair value still excludes "any appreciation or depreciation in anticipation of the corporate action." 15 Pa. Cons. Stat. § 1572; *see* 2001 Amended Committee Comment to § 1572 (outlining the expanded definition of fair value and Pennsylvania's adherence to the Delaware approach enunciated in *Weinberger v. UOP*, 457 A.2d 701 (Del. 1983)).

---

> highly inequitable result, a result not required by the Pennsylvania statute, and as will be demonstrated shortly, a result not warranted by the Pennsylvania decisions relied on by defendants. Even where a statute by its terms stated that the remedy of appraisal was exclusive, it has been held to relate only to a good-faith sale and will not include a sham sale or legal subterfuge.

*Id.* at 269-70 (quotation omitted). Although the Supreme Court in *Jones II* downplayed the decision in *Miller* because it dealt with the permissibility of a complaint for federal securities law, the Court did not address *Miller's* analysis, which we find compelling. 412 A.2d at 1103.

[12] Indeed, in this case, the defendants' alleged double-speak regarding the impending asbestos insurance settlement did not come to light until after the merger was completed.

22

Notwithstanding its expanded approach to fair value, Delaware permits separate suits for fiduciary breaches because even the expanded appraisal remedy "may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved." *Weinberger*, 457 A.2d at 714. *See also Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1186 (Del. 1988) (holding that because the appraisal remedy and suits for self-dealing "serve different purposes and are designed to provide different, and not interchangeable, remedies" a separate common law suit for damages was not barred by the appraisal statute). [13]

Fifth, we note that the appraisal remedy is limited to shareholders who have perfected their rights as dissenters before the merger. 15 Pa. Cons. Stat. § 1574. If we were to adopt the interpretation of the statute advocated by defendants, this would mean that any shareholder who was deceived by the majority shareholder into voting for the merger would have no remedy at all for the breach of fiduciary duty. In extreme cases, this might mean that no action—whether appraisal or otherwise—could be brought

---

[13] It is also possible that punitive damages might be available in such a case, which could be calculated without reference to share value. *See SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704-05 (1991) (holding that punitive damages are available when "a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct"); *Hutchinson ex rel. Hutchison v. Luddy*, 870 A.2d 766, 773 (2005) ("This Court found that an award of punitive damages was proper for claims sounding in breach of fiduciary duty"); *see also Viener v. Jacobs*, 834 A.2d 546 (Pa. Super. 2003) (upholding imposition of punitive damages based on majority shareholder's fiduciary breach in squeeze-out merger).

23

against a majority shareholder which had breached its fiduciary duty.

Finally, Section 1105 provides that when there is "fraud or fundamental unfairness" the appraisal remedy is not exclusive. Although Pennsylvania's Business Corporation law does not define these terms and case law is thin, relevant authority indicates that a claim for breach of fiduciary duty based on majority self-dealing and misrepresentations falls within the ambit of fraud or fundamental unfairness. At least one Pennsylvania court has held that where a plaintiff asserts "a plethora of technical and procedural omissions by the defendants in completing the merger" there may be fraud or fundamental unfairness such that the plaintiffs are not limited to appraisal rights. *First Union Nat'l Bank v. Quality Carriers, Inc.*, 48 Pa. D. & C.4th 1, 13 (Pa. Ct. Com. Pl. 2000). Moreover, the Revised Model Business Corporation Act ("MBCA") contains a similar provision permitting claims alleging "fraud or material misrepresentation." § 13.02(d) (2005). The commentary to that provision notes that it "creates an exception for cases where fraud or material misrepresentation have affected the shareholder vote to such an extent as to have caused the corporate action to be approved mistakenly. The concept of misrepresentation includes the omission of a material fact necessary to make statements made not misleading."[14] *Id.* at cmt. 5.

---

[14] The 2001 Amended Committee Comment to Pennsylvania's appraisal statute, 15 Pa. Cons. Stat. § 1571, indicates that the procedure for exercising dissenters rights is patterned generally after the MBCA, specifically the 1978 amendments to the MBCA. The 1978 Amendments, like the most recent Revised MBCA, suggest that there is no right to attack the validity of the proposed merger except when the merger is "unlawful or fraudulent." *See* 33 Bus. Law. 2587, 2591 (1978). *See also* Robert B. Thompson, *Exit, Liquidity, and Majority Rule: Appraisal's Role in Corporate Law*, 84 Geo. L.J. 1, 43 (1995) (noting that "[t]he commentary to the Model Business Corporation Act observes that its language preserving claims that are 'unlawful or fraudulent' would also preserve claims based on fiduciary duty").

24

In this case, Mitchell Partners has alleged that the majority shareholders of Irex engaged in self-dealing, withheld critical information from and exerted influence over the supposedly neutral Special Committee, and omitted critical information from the proxy statements. These allegations are, at this stage, sufficient to satisfy Section 1105's carve out that permits suits other than appraisal in the event of fraud or fundamental unfairness.

As briefly noted, caselaw from Delaware is in accord with our analysis and conclusion. Although we recognize that these cases are not controlling, their logic has persuasive force and to the extent that Delaware represents the vanguard of corporate law, they are certainly worth noting.[15] The Delaware Supreme Court addressed the very question presented in this litigation in *Cede*, 542 A.2d 1182. That is, the Court addressed "the standing and right of a minority shareholder who has dissented from a cash-out merger and commenced an appraisal proceeding under [Delaware's appraisal statute] to assert and pursue a later-discovered individual claim of fraud in the merger through an action for rescissory damages against the participants for breach of fiduciary duty to the shareholder." *Id.* at 1183. The Court reiterated its earlier holding from *Weinberger*, 457 A.2d 701, "that a statutory appraisal proceeding . . . and a rescissory suit

---

[15] Although the Superior Court in *Jones I* minimized the role of Delaware law on this issue, we note that subsequently both the Pennsylvania legislature and Pennsylvania courts have referenced Delaware corporate law and its treatment of the appraisal statute as a model and a guide. *See, e.g.*, 2001 Amended Committee Comment to 15 Pa. Cons. Stat. §§ 1571 and 1572 (specifically noting and discussing at length that under the Pennsylvania appraisal statute certain Delaware practices are followed); *In re Glosser Bros., Inc.*, 555 A.2d 129, 134 (Pa. Super. Ct. 1989) (specifically noting Delaware's "expertise in these matters" and approving *Weinberger* and the Delaware approach to valuation of fair value under the appraisal statute).

25

for fraud, misrepresentation, self-dealing and other actionable wrongs violative of 'entire fairness' to minority shareholders serve different purposes and are designed to provide different, and not interchangeable, remedies." *Cede*, 542 A.2d at 1186 (footnote omitted). The Court explained that appraisal was a limited legislative remedy intended to provide dissenters with the fair value of their holdings and that the only defendant is the surviving corporation. In contrast, a breach of fiduciary duty claim affords more expansive remedies and is brought against the alleged individual wrongdoers. *Id.* at 1187-88. For those reasons, the Delaware Supreme Court held that claims based on majority shareholders' fiduciary breaches could be brought in separate suits (indeed, the Court held that such claims should not be brought in the appraisal proceeding, consistent with the Pennsylvania Supreme Court's holding in *Jones II*).

The Delaware Supreme Court's holding in *Cede* is even more persuasive when one considers that the Court had previously expanded the definition of "fair value" applicable to appraisal valuation. *See Weinberger*, 457 A.2d at 712-13. Notwithstanding the broadened inquiry available within appraisal, the Court held that appraisal was not adequate and did not prevent separate suits for fraud or fiduciary breach against the majority shareholders.

Guided by the above analysis, we predict that the Supreme Court of Pennsylvania would hold that Pennsylvania's appraisal statute does not exclude separate, post-merger suits for damages alleging that majority shareholders breached their fiduciary duties to minority shareholders in the process of consummating a freeze out merger, nor does it exclude the related claim that the Special Committee members aided and abetted that breach. As we held in *Herskowitz*, "it is a clear holding that in Pennsylvania the statutory appraisal cause of action coexists with common law causes of action. Indeed no other rules makes sense, for the appraisal remedy is available even absent misconduct of

26

corporate officials. It was hardly enacted to provide a shield for misconduct." 857 F.2d at 187.[16]

## IV.

The foregoing is not intended to suggest that we accept the validity of Mitchell Partners' allegations. They have yet to be put to their proof. For the reasons set forth, we will reverse the decision of the District Court dismissing all counts based on the appraisal remedy's purported exclusivity and count 3 based on the alternative reason that Mitchell Partners

---

[16] We note that neither the parties nor the District Court examine whether the equitable claim for unjust enrichment might be barred by the exclusivity provision while the common law fiduciary breach claim is permitted. The District Court merely held that all claims are barred. Without briefing on whether the unjust enrichment claim should be treated differently than the fiduciary breach claim under the appraisal statute, we leave that question to the District Court in the first instance.

As an alternative ground for dismissal of the unjust enrichment claim, the District Court held that Mitchell Partners had failed to respond to defendants' contention that equitable remedies are not available when there is an adequate remedy at law such as the appraisal remedy. The District Court reasoned that this failure to respond warranted dismissal under Local Rule 7.1(c), which requires any party opposing a motion to serve a brief in response. Mitchell Partners attempted to respond to this argument and submitted a brief contending that unjust enrichment was not precluded and could be brought in tandem with its fiduciary breach claim. Although Mitchell Partners' brief may not be directly responsive, dismissal under Local Rule 7.1(c) was not appropriate because Mitchell Partners did timely respond, complying with 7.1(c)'s requirements. We reverse the District Court's decision on this count and remand to the District Court for consideration of the merits of the defendants' motion to dismiss count 3.

27

violated Local Rule 7.1(c). We remand for proceedings consistent with this opinion.

**Mitchell Partners v. Irex Corp.,**
**Nos. 10-4040 & 10-4091**

GARTH, *Circuit Judge*, dissenting.

I must respectfully dissent from the majority opinion.

The sole issue presented on this appeal is whether the Pennsylvania remedies available to minority dissenting shareholders in a *pre-merger* transaction are available to the dissenters after the merger has taken place, i.e. in a *post-merger* context. The majority, in its opinion, has held that there is no difference. I disagree. Pennsylvania has clearly distinguished between *pre-merger* and *post-merger* remedies, and has stated by statute and in decisional law that in a *post-merger* context, dissenting stockholders have only one remedy. That remedy is a statutory appraisal.

As a court sitting in diversity, we are "bound to follow state law as announced by the highest state court," and to the extent that "the state's highest court has not addressed the precise question presented, we must predict how the state's highest court would resolve the issue." Wayne Moving & Storage of N.J., Inc. v. Sch. Dist. of Phila., 625 F.3d 148, 154 (3d Cir. 2010) (citations, internal quotation marks, and alterations omitted). Here, the Pennsylvania Supreme Court has announced unambiguously in In re Jones & Laughlin Steel Corp. (Jones II), 412 A.2d 1099, 1102 (PA. 1980), that statutory appraisal is "to be the exclusive *post-merger* remedy available to dissenting stockholders." (Emphasis added).

The subject of this appeal is a purely Pennsylvania merger transaction, and is governed only by Pennsylvania law. In this case, the minority shareholder, Mitchell Partners, L.P., took no action challenging the merger before the merger was completed. After the merger was completed, then and only then, did it seek remedies in addition to a statutory appraisal of the stock -- all in derogation of the Pennsylvania Corporation Law of 1988, § 1105, (codified at 15 Pa.Cons.Stat. 1105).

1

The majority, however, has held that the interpretation of the relevant Pennsylvania statutes has not yet been addressed by the Pennsylvania Supreme Court and it "predicts," (not by referring to Pennsylvania law, but relying on Delaware law,) the Pennsylvania statute's intent and meaning.

I cannot agree that the "prediction" is necessary, in light of Jones II, supra.[1]

## I.

The pertinent provision of the Pennsylvania Business Corporation Law of 1988 (1988 BCL) § 1105 (codified at 15 Pa. Cons. Stat. § 1105), provides in relevant part:

> A shareholder of a business corporation shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed plan . . . , nor any right to claim the right to valuation and payment of the fair value of his shares because of the plan . . . , except that he may dissent and claim such payment if and to the extent provided in Subchapter D of Chapter 15 (relating to dissenter rights) where this subpart especially provides that

---

[1] However, if a prediction were to be deemed necessary, the majority's prediction under Pennsylvania law is flawed. See text, infra. Moreover, if indeed the majority harbored doubts about the intent and meaning of Pennsylvania law, it should have certified this appeal to the Pennsylvania Supreme Court under Third Circuit Local Appellate Rule Misc. 110 and Internal Operating Procedure 10.9. It has declined to do so.

2

> *dissenting shareholders shall have the rights and remedies provided in that subchapter. Absent fraud or fundamental unfairness, the rights and remedies so provided shall be exclusive. . . .*

(Emphasis added; footnote omitted.) This section refers to Subchapter D of Chapter 15, codified at 15 Pa. Cons. Stat. §§ 1571-1579, which outlines the process through which dissenting shareholders may seek a statutory appraisal, i.e., a judicial determination of "fair value" of their shares.

In Jones II, the Pennsylvania Supreme Court held that the fair-value appraisal proceeding was intended "to be the exclusive *post-merger* remedy available to dissenting shareholders." Id. at 1102 (emphasis added). The Court in Jones II rejected the plaintiffs' efforts to obtain additional relief from the appraisal court, concluding that even if the plaintiffs could assert a viable claim for breach of fiduciary duty, it would be "insufficient to confer jurisdiction upon an appraisal court acting pursuant to § 515[2] to determine the validity of the transaction." Id. at 1103.

Although the immediate issue before Jones II was whether minority shareholders could seek to enjoin a merger or recover damages for fiduciary breaches in a *post-merger* appraisal proceeding, the Supreme Court of Pennsylvania did not limit the scope of its holding to just appraisal-court proceedings or claims in equity. It observed that while Pennsylvania case law "recognize[s] the right of shareholders to enjoin proposed unfair or corporate actions[,] . . . [i]n each case where this power was exercised it was in an action in

---

[2] The fair-value appraisal proceeding was outlined in section 515 of the then-effective Pennsylvania Business Corporation Law of 1933 (1933 BCL) -- codified at former 15 Pa. Cons. Stat. § 1515K, one of the predecessors to current 15 Pa. Cons. Stat. § 1105.

3

equity instituted *prior* to the consummation of the proposed transaction." Id. at 1104 (emphasis added).

The Jones II appellants had "failed to take any action to prevent the merger despite the period of almost a full month in which they could have acted" and "did not seek a rescission of the merger for at least three and one-half months following its consummation." Id. The Court therefore held:

> We are not unmindful of the grave unfairness and fraud frequently present in mergers of this type, especially where there is a 'cash-out' of the minority shareholders. . . . Our concern, however, does not change the view that appellants' *post-merger remedies were limited to the appraisal of the fair value of their stock.*"

Id. (emphasis added).

In so holding, the Pennsylvania Supreme Court affirmed the decision of the Superior Court of Pennsylvania, which had determined that "[b]y providing that the appraisal remedy 'shall be exclusive' the legislature must have intended to avoid the difficulties as it saw them to be that would be experienced if the remedy was regarded as only an alternative to an action for rescission." In re Jones & Laughlin Steel Corp. (Jones I), 398 A.2d 186, 192 (Pa. Super. 1979). That being so, the Superior Court had concluded that section 515K "clearly manifests the legislative intent *to bar all actions except for an appraisal after the merger had been consummated.*" Id. at 192 n.14 (emphasis added).[3]

---

[3] In a later iteration of the Jones litigation, Jones III, but in a *pre-merger* context, the Pennsylvania Superior Court held that a separate class action seeking relief for "unfair or fraudulent corporate actions," which arose out of the same merger at issue in Jones I and Jones II, could be pursued. In

4

In other words, as has been pointed correctly out to us: this suit "is precluded by Pennsylvania's carefully considered statutory dissenters' rights scheme under which a dissenting shareholder may bring an injunctive action alleging fraud or fundamental unfairness to prevent a merger before it takes place, but may not sit on its rights, allow the merger to proceed, and then seek to evade the statutory appraisal remedy. The exclusive remedy available to a dissenting shareholder in these circumstances is an appraisal proceeding." Appellees' Brief at 17.

## II.

We considered the import of the Jones trilogy in Herskowitz v. Nutri/System, Inc., 857 F.2d 179 (3d Cir. 1988). In Herskowitz, shareholders of a corporation challenged a leverage buyout by filing suit against the corporation's management, alleging misrepresentation and unfair consideration resulting from self-dealing by fiduciaries. Management, relying on the Jones cases, argued that section 515K "exclude[s] all *post-merger* remedies, including remedies for misrepresentation and for breach of fiduciary duty." Id. at 186 (emphasis added). However, we distinguished Herskowitz from Jones I and Jones II, noting that while the Jones cases dealt with a "*post-merger* appraisal suit," "this [the Herskowitz case] was commenced at the *pre-merger* stage," (emphasis added), which rendered it analogous to and on all fours with Jones III. Id. at 186-87. (See note 2, supra).

In the wake of the Jones cases, ensuing decisions have preserved the distinction between minority-shareholder suits filed *pre-merger* as opposed to those filed *post-merger*.

---

re Jones & Laughlin Steel Corp. (Jones III), 477 A.2d 527, 532 (Pa. Super. 1984). However, as the Pennsylvania Supreme Court had earlier emphasized in Jones II, the separate class action discussed in Jones III had been filed "*[p]rior to the merger's consummation.*" Jones II, 412 A.2d at 1101 (emphasis added).

5

Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 224 (3d Cir. 2005) ("federal court may consider lower state court precedents to be . . . predictive."). E.g., Warden v. McLelland, 288 F.3d 105 (3d Cir. 2002) (allowing a *pre-merger* injunction because the action was filed before the merger, "a critical distinction" from Jones II, where the action was filed after the merger); Dower v. Mosser Indus., Inc. 648 F.2d 183, 189 (3d Cir. 1981) (construing Jones II as dictating that "[u]nder Pennsylvania law, . . . a minority shareholder may act *before a merger* to seek an injunction." (emphasis added); Barter v. Diodoardo, 771 A.2d 835, 838 (Pa. Super. 2001) (holding that suit for rescission of merger was not precluded by Jones II because "at the time the [minority shareholder] brought suit seeking injunctive relief the merger was not yet effective") (emphasis added); Shapiro v. Berwind Corp., 13 Pa. D & C. 647, 650 (Pa. Com. Pl. 1980) (dismissing minority shareholders' *post-merger* fiduciary-breach claim because Jones I "interprets section 515K to manifest the legislative intent to bar all actions except for an appraisal after the merger has been consummated.").[4]

---

[4] The same distinction is reflected in the decisional law of two other States that have enacted corporate statutes providing, without exception, that statutory appraisal is dissenting shareholders' lone remedy. See Steinberg v. Amplica, Inc., 729 P.2d 683, 685, 694 (Cal. 1986) (considering whether California appraisal statute, which denies dissenting shareholder "any right at law or in equity" to challenge completed short-form merger, "is the exclusive remedy for a shareholder who alleges that his shares were undervalued because of fraud and breach of fiduciary duty by the majority stockholders," and concluding that "the section prohibits an action for damages based on the fact that a merger has taken place"); Yanow v. Teal Indus., Inc., 422 A.2d 311, 318 (Conn. 1979) (affirming dismissal of claims of objecting shareholder, who sought accounting, damages, and nullification of merger on account of defendants' alleged corporate wrongs, in light of "the specific exclusivity of the appraisal remedy envisioned by the Connecticut [appraisal] statute").

6

The policy arguments that the majority opinion relies upon to the exclusion of precedent are matters reserved for the Pennsylvania legislature -- not our court -- to consider. Nor are such Pennsylvania considerations the province of the Delaware legislature.

## III.

Section 1105 of the Pennsylvania Business Corporation Law underwent a change in 1988 that neither the Jones cases nor Herskowitz had occasion to address. Although the language added may at first glance appear to authorize suits such as Mitchell Partners', the amendment, which added only one clause -- "a shareholder shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed plan or amendment. . . " -- did no more than reenact the existing appraisal statute. Both the plaintiff and the defendant, as the majority opinion recites, agree that it did not substantively alter the predecessor statute.[5] Maj. op., 14. Accordingly, the majority now also agrees that any interpretation of the present statutes must look to the predecessor provisions.

The amending clause appears in the 1988 amendment as "a shareholder shall not have any right to obtain, *in the absence of fraud or fundamental unfairness*, an injunction against any proposed plan or amendment. . . ." (emphasis added). As I have pointed out, that provision has been interpreted by the Pennsylvania Supreme Court to refer to *pre-merger* transactions only. The revised statute did no more than codify the principle that a shareholder could seek an injunction to prevent any proposed corporate plan with fraud or fundamental unfairness, *providing* that any action was brought prior to the completion of the merger. Accordingly, plaintiff shareholders who had filed their action

---

[5] After oral argument, we sought supplemental memoranda from both parties discussing the 1988 amendment. Both parties agreed that the amendment made no substantive change to the earlier statutes.

after the merger was completed, i.e. *post-merger*, could not benefit from the amendment.

Thus, the amended statute retained the distinction that the Jones II court had made explicit -- the "fraud or fundamental unfairness" clause and exception is confined to the *pre-merger* context. Pennsylvania courts have consistently upheld that principle, and thus we are bound to apply Pennsylvania's precedents.

## IV.

In conclusion, I would affirm the District Court's order which dismissed the plaintiff's complaint because: 1) we are bound to follow Pennsylvania law; 2) Pennsylvania law is unequivocal that there is a *pre-merger/post-merger* difference; 3) the only remedy available to a dissenting minority stockholder who files a *post-merger* complaint is that of statutory appraisal; 4) Jones II provides the substantive law holding that statutory appraisal is available as the exclusive *post-merger* remedy; 5) the 1988 amendment to § 1105 did not modify the predecessor statute; 6) our decision in Herskowitz is consistent with the principle announced in Jones II, inasmuch as Herskowitz was a *pre-merger* case; 7) Delaware statutes, law, and policy have no place in our analysis.

Because I find the majority's decision 180 degrees at odds with the Pennsylvania governing law, I respectfully dissent.

8